Moshe **MENORA**, et al., Plaintiffs,

v.

**ILLINOIS HIGH SCHOOL ASSOCIATION**, et al., Defendants.

No. 81 C 960.

United States District Court,
N. D. Illinois, E. D.

Nov. 3, 1981.

Sylvia M. Neil, David A. Grossberg, American Jewish Congress, Chicago, Ill., for plaintiffs.

John G. Poust, Stephen E. Sward, Wayne F. Plaza, Margaret S. Garvey, Rooks, Pitts, Fullager & Poust, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Plaintiffs sue individually and on behalf of the class of male members of the Ortho-

dox Jewish faith who want to compete in Illinois interscholastic high school basketball. They challenge on First Amendment grounds the Illinois High School Association ("IHSA") rule that, by prohibiting the wearing of headgear, makes it impossible for members of plaintiff class to play without violating a fundamental tenet of their faith.[1] IHSA has moved that I recuse myself from hearing this action under 28 U.S.C. §§ 144 ("Section 144") and 455 ("Section 455").[2] For the reasons stated in this memorandum opinion and order IHSA's motion is denied.

On October 28, 1981 Astroth filed an "Affidavit of Disqualification of Honorable Milton I. Shadur" stating: [3]

(1) That he is the Executive Secretary of Illinois High School Association, the defendants.

(2) That he believes and avers that the Judge before whom this action is pending, Honorable Milton I. Shadur, has a personal bias and prejudice against the defendants.

(3) The fact and reasons for the belief that such personal bias and prejudice exist are as follows:

(a) The Honorable Milton I. Shadur was a member of and was active in the American Jewish Congress prior to his appointment to the federal judiciary.

(b) The American Jewish Congress is the organization that is bringing this action before the court.

(c) The issues before the court center on the free exercise of Orthodox Jewish beliefs.

This opinion will treat with the last of Paragraph 3's factual assertions first, simply because it is so entirely frivolous in the legal sense and ignorant in the factual sense.

As a matter of law my religious beliefs, as well as those represented by American Jewish Congress, are irrelevant—a matter treated shortly in this opinion. But because IHSA has again sought to place them in issue, I will repeat the statement I made when IHSA first moved my recusal: I am Jewish, but I am not an Orthodox Jew. I do not share the beliefs of plaintiffs, nor do I practice them. But of course I respect them as I respect the beliefs and practices of every religion or, for that matter, every atheist and every agnostic.

As for American Jewish Congress, like most Jewish organizations it does not have a particular religious affiliation of its own, either Orthodox, Conservative or Reform. Its members are drawn from every shade of Jewish belief or, in many cases, from every shade of lack of Jewish belief. IHSA and its counsel disclose a complete lack of understanding of such and other aspects of Judaism, an understanding that would have foreclosed their reliance on affidavit ¶ 3(c) in the current motion.[4]

---

1. Plaintiffs' Orthodox Jewish beliefs require them to cover their heads at all times (with very limited exceptions that do not include playing basketball) as a sign of respect to God, in whose presence they believe themselves to be at all times. Their beliefs are implemented by the wearing of skullcaps ("yarmulkes"), which come within the prohibition of the IHSA rule.

2. Although plaintiffs have named a second defendant, IHSA's Executive Secretary Lavere L. Astroth ("Astroth"), he is joined solely in his official capacity. For convenience this opinion will refer to both defendants simply as "IHSA."

3. Astroth's affidavit supports IHSA's second recusal motion, the first having been made orally when the case was first filed in February 1981 and assigned to my calendar under our District Court's random assignment system. No added facts are asserted in the current mo-

tion and supporting affidavit. Under the statutes and relevant case law the motion, coming as it does literally on the eve of the long-ago scheduled hearing (a hearing whose timing is critical, given the imminence of the new basketball season) and advancing no new facts after an eight-month silence, could be denied on grounds of untimeliness or other non-substantive deficiencies. However the need to avoid any appearance of impropriety seems to me to call for its denial on the merits rather than technical grounds.

4. At the time of IHSA's original February 1981 motion, filed upon receiving a motion for preliminary injunctive relief in a brand-new lawsuit, such lack of knowledge might have been quite understandable. But the present motion,

What is critical here, however, are not these facts as to religious beliefs, but rather the poverty of IHSA's legal position in seeking to place them in issue. Three terms back, when the Supreme Court heard *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1818, 59 L.Ed.2d 538 (1979), should Justice Brennan have recused himself, instead of writing as he did the dissenting opinion? When a suit is brought challenging the erection of the Nativity scene in a city hall at Christmas, who shall hear it? Must a Jewish judge recuse himself or herself? If so, must not a Christian judge? When the question is whether the Lord's Prayer from the King James Bible is to be recited in public schools, must a Protestant judge recuse himself or herself? If it is the Douay Bible instead, can the Protestant judge sit but not the Catholic? Does the Jewish judge not hear either of those cases?

What defendants have wholly failed to perceive was stated very simply in *Lawton v. Tarr*, 327 F.Supp. 670 (E.D.N.C.1971):

> It is hornbook law that the attitude or feeling a judge may entertain toward the subject matter of a case does not disqualify him.[5]

That proposition has been confirmed repeatedly in contexts that have direct applicability here.

For example in *State of Idaho v. Freeman*, 507 F.Supp. 706 (D.Idaho 1981) Judge Marion Callister, a member of the Mormon Church, recently refused to recuse himself in a case involving the Equal Rights Amendment, even though the Church had taken a strong formal position opposing ERA. Indeed Judge Callister was serving as a Regional Representative for the Church when suit was filed.

In *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 388 F.Supp. 155 (E.D. Pa.1974) Judge Leon Higginbotham was faced with an affidavit similar to that filed here. In a lengthy and thoughtful opinion that should be read for more than the brief excerpt quoted here, Judge Higginbotham said (*id.* at 159, citations omitted):

> Facts must be pleaded which show that there exists personal bias and prejudice on the part of the trial judge.... Disqualification will be warranted only if such personal bias is shown.... The facts pleaded will not suffice to show the personal bias required by the statute if they go to the background and associations of the judge rather than to his appraisal of a party personally....

Still another comparable example is Judge Constance Baker Motley's refusal to recuse herself in a civil rights action because she is Black, a woman and had represented many civil right plaintiffs in private practice. *Blank v. Sullivan and Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y.1975).

It would be easy to multiply the examples of like opinions. But the bottom line is what Judge Frank said in *In re J.P. Linahan*, 138 F.2d 650, 651 (2d Cir. 1943) (another opinion commended to counsel for reading in full):

> Appellants entertain a fundamentally false notion conception of the prejudice which disqualifies a judicial officer.

See also *Ex parte Fairbank*, 194 F. 978, 989–90 (M.D.Ala.1912).

Proper homework, the obligation of every lawyer on every issue of law, would have involved counsel's consideration of the extensive and consistent body of case law before filing a groundless motion. IHSA's counsel have cited no authority whatever in support of their motion. Plainly the aspect of the affidavit stating the "issues before the Court center on the free exercise of Orthodox Jewish beliefs" is not a ground for recusal.

---

5. Nothing in this opinion should be viewed as an expression *in fact* of my "attitude or feeling ... toward the subject matter...." As the law mandates I am simply accepting Astroth's affidavit at face value.

like every other motion in any area of the law, imposes a responsibility on counsel to research whatever issues—factual and legal—may be relevant. They plainly have not done so.

IHSA's other asserted ground for disqualification deals with my former membership and activity in American Jewish Congress ("AJC"). When I took the bench I resigned from that and a number of other organizational affiliations in accordance with the Code of Judicial Conduct for United States Judges (the "Code"). Under the Code resignations from organizations "likely [to] be engaged in proceedings that would ordinarily come before [the judge] or [to] be regularly engaged in adversary proceedings in any court" are called for[6] precisely to eliminate the need for disqualification, to serve the all-important need to preserve the integrity of our absolutely random assignment system and to minimize judge-shopping and transfers. Code Canon 5 B; Advisory Committee on Judicial Activities, Advisory Opinion No. 40 (1975), confirmed in Advisory Opinion 62 (1980).

In any case my former AJC membership and activity must be viewed against the statutes IHSA seeks to invoke. Section 144 speaks of personal bias or prejudice against a *party*. IHSA makes no allegations whatever as to the *parties*. Plaintiffs are individual young men and their fathers, none of whom I know or have ever met. Their high schools, also plaintiffs, are only names to me—I do not know their locations, nor do I have any idea of who serves on their governing boards or as their officers. On the defendants' side, I do not know Astroth and my only knowledge of IHSA is derived from newspapers and watching its annual state basketball championship finals on television.

*American Jewish Congress* is not a party. Moreover, given what has been said about its own organizational nature and the absence of any affiliation of its membership generally with plaintiffs' individual beliefs, that is not a token difference. AJC *has* provided lawyers for plaintiffs in much the same way as do (among other organizations) American Civil Liberties Union and

Lawyers Committee for Civil Rights Under Law. When I was practicing law I too served as a volunteer pro bono lawyer on issues I considered important, for all three of those organizations among others.

Just as IHSA has exhibited the myopia to lump all Jews as fungible, so it has failed to think through—or think about—the legal distinction between acquaintanceship with (let alone bias for or against) the *parties* and the same relationships with their *lawyers*. What IHSA essentially asserts here is that because one of plaintiffs' lawyers is the staff counsel, and the other is a volunteer lawyer, for an organization to which I once belonged and for which I was once a volunteer lawyer, I am disqualified to sit.

That contention must carry its own death sentence. It too is plainly ungrounded. It would for example require a substantial part of our bench, including me, to recuse ourselves in every case in which staff counsel for ACLU or Lawyers Committee for Civil Rights Under Law was involved, or in which either of those organizations was active in obtaining volunteer lawyers.

Uniform case law holds that Section 144 speaks of a personal prejudice against (or toward) a party. It cannot be called into play because of a judge's relationship with a party's lawyer unless that relationship is so strong in either direction so as to prevent the fair rendition of justice. *United States v. IBM*, 475 F.Supp. 1372, 1383 (S.D.N.Y. 1979), for example, held that prejudice against counsel would amount to prejudice against a party only if the animosity were so deep that the counsel could do no right. *Accord, United States v. Carignan*, 600 F.2d 762 (9th Cir. 1979); *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1052 (5th Cir. 1975); *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497, 522–23 (D.S.C.1975).

When the charge is partiality *toward* counsel—as implied here—the obverse side

---

6. In literal terms the Code itself states only that a judge not serve as an officer, director, trustee or non-legal advisor of such organizations. However the gloss placed on the Code by the non-binding Advisory Opinions referred to in the text indicates that the same considerations apply to mere membership, a position in which I concur. Accordingly I terminated all such memberships as well as leadership positions.

of the coin appears to present itself. Some years ago, when John Poust (the senior counsel of record for ISBA) had a personal matter that required him to retain counsel, he came to me to represent him. My acquaintanceship with Mr. Poust is of longer standing than with either of the young lawyers representing plaintiffs. But I am not thereby disqualified for "bias" in Mr. Poust's favor, nor in his partners' favor, at this trial—just as I am not disqualified for "bias" in favor of plaintiffs' lawyers because we were fellow members of AJC. If such attenuated relationships with members of the bar were sufficient to cause recusals, my calendar—and those of every fellow judge—would be very light indeed.

This is not a matter of going behind the assertions of a Section 144 affidavit to determine whether those assertions are true. Such a procedure is of course impermissible. Rather the point is that the Astroth affidavit is totally insufficient to demonstrate personal bias or prejudice against IHSA. What it *does* assert is legally irrelevant.

This opinion has until now commented on the affidavit subparagraphs individually. One other matter should be added that bears on them collectively. To the extent that the affidavit implies a relationship between its first two subparagraphs (¶¶ 3(a) and (b)) and its last subparagraph (¶ 3(c)), it relies on a total non sequitur. Although this point may not be necessary to the decision, it is nonetheless important.

AJC, like most democratic organizations, is not monolithic in its official views. Membership or affiliation is not equivalent to agreement with the positions the organization's governing body may choose to take. Precisely the same is true as to differences between the governing bodies at the local and national level.

There were a great many instances, when I was an AJC member, in which I disagreed sharply with policies adopted or positions taken by that organization. As I also mentioned in denying the earlier motion to recuse, one of those was my belief that the

proposed American Nazi Party march in Skokie was protected by the First Amendment. That belief, ultimately upheld in the courts, *Collin v. Smith*, 578 F.2d 1197 (7th Cir. 1978), *cert. denied*, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978), was one I urged unsuccessfully on AJC's Chicago and national Governing Councils. My view, which did not prevail, was that AJC should not join other Jewish organizations in supporting efforts to stop that march by sponsoring or joining in litigation.

"Jewish community" is typically a misleading term for something that does not exist as an entity. In my memory the nearest that term has come to having any accuracy was in describing the deep feelings engendered by the issue I have just identified. On that issue my view was very much in the minority.[7]

There have been many other instances, which again need not be multiplied, in which I have differed with AJC's majority-adopted positions on church-state and other issues. And the same is of course true as to ACLU and every other organization to which I have ever contributed money or paid membership dues. IHSA's position has the inherent double vice of (1) equating the kind of affiliation that organizational membership represents with an identity of beliefs, and (2) then taking another impermissible leap by equating such presumed beliefs with judicial disqualification. In another era a similar "thought" process carried the pejorative label of "guilt by association."

Necessarily implicit in IHSA's affidavit and motion is the assumption that all Jews are alike, or all members of Jewish organizations are alike, or both. Such assumptions are just as wrong and just as demeaning as saying that all Blacks look alike or are alike, or all Orientals look alike or are alike. To put it in more formal terms, IHSA's affidavit and motion suffer from what logicians refer to as the fallacy of the undistributed middle.

---

7. Parenthetically my recollection is that David Grossberg, volunteer counsel for plaintiffs in this case, was on the opposite side of the issue from me.

What has been said in this opinion as to Section 144 essentially applies to Section 455(a) as well, although Section 455(a) states the test in terms of whether the Court's impartiality might reasonably be questioned. Both the *Davis*, 517 F.2d at 1051–52, and *Carignan*, 600 F.2d at 764, cases typify the numerous decisions holding that the two sections are to be construed in pari materia and that the same tests for disqualification apply under each section.

Whether or not that is so, the *State of Idaho*, 507 F.Supp. at 721–29, and *Davis*, 517 F.2d at 1052, cases are direct precedents for ruling IHSA's affidavit insufficient under Section 455(a). Finally the following statement by Justice Rehnquist in *Laird v. Tatum*, 409 U.S. 824, 835, 93 S.Ct. 7, 13, 34 L.Ed.2d 50 (1972) applies a fortiori here: [8]

> Since most Justices come to this bench no earlier than their middle years, it would be unusual if they had not by that time formulated at least some tentative notions that would influence them in their interpretation of the sweeping clauses of the Constitution and their interaction with one another. It would be not merely unusual, but extraordinary, if they had not at least given opinions as to constitutional issues in their previous legal careers. Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.

### Conclusion

As a matter of law Astroth's affidavit does not state facts that demonstrate "personal bias or prejudice" against defendants, nor is it sufficient to create a reasonable question of this Court's impartiality. Accordingly defendants' motion to recuse is denied under each of Section 144 and 455(a).

---

**8.** One need not share (as I do not) Justice Rehnquist's view on the ultimate question of recusal under the facts of *Laird v. Tatum* to recognize the obvious validity of the quoted statement.