Birdie Mae DAVIS et al., Plaintiffs-Appellants, United States of America, Plaintiff-Intervenor, Edwin Foster, Plaintiff-Intervenor,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY et al., Defendants-Appellees.

James E. BUSKEY et al., Plaintiffs-Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY et al., Defendants-Appellees.

Birdie Mae DAVIS et al., Plaintiffs, United States of America, Plaintiff-Intervenor, James E. Buskey, Plaintiff-Intervenor-Appellant,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY et al., Defendants-Appellees.

Nos. 74–3894, 75–1312, 74–4257 and 75–1827.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1975.

Rehearing and Rehearing En Banc

Denied Oct. 2, 1975.

J. U. Blacksher, Mobile, Ala., Jack Greenberg, Norman Chachkin, Charles Stephen Ralston, New York City, for Birdie Mae Davis, James E. Buskey and others.

J. Stanley Pottinger, Asst. Atty. Gen., Brian K. Landsberg, Walter K. Barnett, Judith E. Wolf, Attys., Civil Rights Div., Dept. of Justice, Washington, D. C., amicus curiae.

Victor T. Hudson, Abram L. Philips, Jr., Mobile, Ala., for defendants-appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This is the thirteenth appeal in the Mobile school case (Mobile XIII), which case began in 1963.[1] The questions presented are illustrative of problems encountered in winding down a school case. Some are important to the administration of final school desegregation decree. One centers on an effort to disqualify the district judge. The questions arise out of four separate appeals which we have consolidated.

The district court entered a consent order on July 9, 1971 adopting a "Comprehensive Plan for a Unitary School System" as formulated by the parties. That plan, and the district court consent order thereon, adopted the following requirement of *Singleton v. Jackson Municipal Separate School District*, 5 Cir. (en banc), 1970, 419 F.2d 1211:

> "Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin."

*See also Carter v. West Feliciana Parish School Board*, 5 Cir., 1970, 432 F.2d 875.

Jurisdiction of the district court continued over the matter as a class action. Meanwhile, this court held that the proper and orderly procedure to be followed by third parties in seeking to question deficiencies in the implementation of desegregation orders or for further relief in ongoing school cases is by petition to intervene. *See Hines v. Rapides Parish School Board*, 5 Cir., 1973, 479 F.2d 762; *Lee v. Macon County Board of Education (Conecuh County)*, 5 Cir., 1973, 482 F.2d 1253. Thereafter in *Mobile XI*, we rejected the effort of the National Education Association to superimpose a class

---

1. *See Davis v. Board of School Commissioners of Mobile County*, 430 F.2d 883, 885 n. 1 (5th Cir. 1970) (*Mobile IX*) for citations to earlier appeals. *See also Davis v. Board of School Commissioners of Mobile County*, 483 F.2d 1017 (5th Cir. 1973) (*Mobile X*); *National Ed-* ucation Assn. v. Board of School Commissioners of Mobile County, 483 F.2d 1022 (5th Cir. 1973) (*Mobile XI*); *Davis v. Board of School Commissioners of Mobile County*, 496 F.2d 1181 (5th Cir. 1974) (*Mobile XII*).

action on behalf of the black school administrators and teachers in the system on the pending class action. *National Education Association, supra*, n. 1, 483 F.2d 1022 (*NEA*). In doing so, we pointed to our prior decisions which required any complaint of discrimination within the scope of a pending school suit to be advanced by petition to intervene in that case.

## I.

Undaunted by these decisions, counsel for the plaintiffs here proceeded to file two new class actions. One was filed on behalf of Edwin Foster, a black assistant school principal, and another on behalf of James E. Buskey, also a black assistant school principal. Each claimed discrimination in having been denied promotion to principal. The district court dismissed each suit with leave to intervene in *Birdie Mae Davis*. Each thereafter intervened but Buskey appeals nevertheless from the order of dismissal. This is No. 74–4257.

Two of the appeals are interlocutory and are brought under 28 U.S.C.A. § 1292(b). These are Nos. 75–1312 and 75–1827.[2] The appeals are from orders denying the motions of Foster and Buskey, respectively, to disqualify the district judge for bias under 28 U.S.C.A. § 144.[3]

The other appeal, No. 74–3894, is by the original class in *Birdie Mae Davis* from an order of the district court refusing to issue an order to show cause why the defendant school board should not be held in contempt for failure to comply with the desegregation consent order relative to professional promotions.

As will be seen, we find no merit in these appeals and affirm as to each. We do give some direction to the district court with respect to the range of discovery to be allowed in the further proceedings in the Foster and Buskey cases on remand.[4] It is to be remembered that only their claims of discrimination in the refusal to promote them to the position of school principal are pending for resolution on the merits. All other matters before us are part of a procedural tangle.

## II.

A brief chronology of the procedural events will assist in understanding our disposition of the several issues.

(A) The Foster suit, filed on January 25, 1974 as a "Complaint in Intervention", sought to maintain a class action consisting of "black persons holding degrees in Administration and Supervision who have been passed over for promotion solely by reason of their race and color". This complaint followed an earlier independent suit by Foster, filed October 5, 1973, which had been dismissed on the authority of *NEA, supra*, with leave being granted for him to intervene in the *Birdie Mae Davis* case.

(B) Interrogatories were served on March 15, 1974 by Mr. Foster on the school superintendent in an effort to develop detailed facts with respect to principals and assistant principals as well as the entire administrative and supervisory force of the Mobile school system.

(C) The district court set the matter for class action determination on February 22, 1974. No basis for maintaining such an action having been offered, the court entered an order on March 25, 1974 that the matter could not be maintained as a class action.

(D) On July 2, 1974, counsel for Foster moved to compel answers to the earlier filed interrogatories. A magistrate en-

---

**2.** No. 75–1312 was numbered as No. 74–8484 prior to our allowing the interlocutory appeal. No. 75–1827 was No. 75–8063 before being allowed.

**3.** Buskey filed an identical motion but has not appealed. In the circumstances, one appeal will suffice to settle the question presented.

**4.** The discovery problem came up as a part of the Foster interlocutory appeal allowed from the denial of the motion to disqualify the district judge.

tered an order on July 8, 1974 requiring that the interrogatories be answered. Defendants moved for reconsideration and the district court, on July 15, 1974, entered an order denying the motion to compel answers with leave to Foster to file interrogatories germane to his complaint.

(E) There were two filings on July 19, 1974. The same interrogatories were served on the school superintendent on behalf of the *Birdie Mae Davis* class in the underlying suit by co-counsel for Foster (who, coincidentally, was one of counsel for the plaintiffs in *Birdie Mae Davis* and had only recently joined the Foster case as co-counsel for Foster). In addition, Foster moved for reconsideration of the order of July 15, 1974.

(F) On July 31, 1974, defendants moved for a protective order as to the *Birdie Mae Davis* interrogatories. On the same day, the district court entered an order denying the motion of Foster for reconsideration, and recited, as a basis for the order, that the court had not been made aware to date of any claim of discrimination other than the Foster claim. (It appears that the Buskey suit, hereafter discussed, had been filed on July 12, 1974. It was filed by co-counsel, also as a separate suit rather than as an intervention, and sought to maintain a class action on behalf of "all past, present and future Negro professional employees" of the school system.)

(G) On August 8, 1974, co-counsel for Foster, who is, as stated, one of the lawyers representing the *Birdie Mae Davis* class, attempted to reopen the *Birdie Mae Davis* case through the vehicle of a motion for an order to show cause why the defendants, collectively and separately, should not be held in contempt for failure to comply with that part of the earlier consent order of the court requiring appointment of the professional staff without regard to race or color. The motion was based on the Foster and Buskey claims.

(H) On August 16, 1974, the district court granted the motion of defendants for a protective order as to the *Birdie Mae Davis* interrogatories, and denied the motion for an order to show cause in that case.

(I) On August 23, 1974, counsel moved for reconsideration of the August 16, 1974 order entered in the *Birdie Mae Davis* phase of the litigation, or in the alternative that it be amended to strike therefrom statements which reflected on counsel with regard to his efforts and motive in seeking to avoid the class action and discovery orders in Foster by his use of the *Birdie Mae Davis* case.

This motion for reconsideration and to strike was supported by an affidavit from counsel in which he asserted that as attorney for the *Birdie Mae Davis* class, he had the solemn duty to insure that the consent order was being carried out and that he was, in effect, monitoring compliance with that order. He regarded the Foster and Buskey claims as establishing a need for monitoring.

(J) On September 20, 1974, the district court denied the motion for reconsideration and to strike. Notice of appeal from this order was filed on October 18, 1974. (No. 74–3894.)

(K) On September 27, 1974, the district court denied the motion of the school board for summary judgment in the Foster intervention.

(L) On the same day, Mr. Foster filed a motion under 28 U.S.C.A. § 144, supported by affidavit, to disqualify Judge Hand from his case on the basis that Judge Hand had "a personal bias or prejudice" against Foster and "other black parents, school children and school teachers in the Mobile school system as members of the plaintiff class". A copy of the affidavit is appended to this opinion and marked "A". The affidavit makes it clear that Foster's affidavit is based on his reading, at the request of his counsel, of an opinion of the same district judge rendered on August 29, 1974 in another case in which counsel appeared. *Robinson v. Union Carbide Corporation*, S.D. Ala., 1974, 380 F.Supp. 731. Judge Hand denied the motion but allowed an interlocutory appeal. (This is No. 75–1312.)

(M) The Buskey suit was dismissed on October 3, 1974, with leave to intervene in *Birdie Mae Davis*. Notice of appeal was filed on November 1, 1974. (This is No. 74–4257.)

(N) On November 20, 1974, Buskey filed a motion and affidavit *in haec verba* to Foster's, to disqualify the district judge. The order denying this motion gave rise to the interlocutory appeal, No. 75–1827.

### III.

#### NO. 74–4257

As stated, only Buskey has appealed from the order requiring intervention rather than being allowed to proceed with a separate suit. It is apparent, however, that our decisions requiring such a procedural approach were the genesis of the overall controversy which has arisen between counsel and the district court. It will be well, therefore, to consider this particular appeal as a first issue.

■ Buskey seeks to avoid our holdings of required intervention, *supra*, on the theory that his claim is asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A., § 2000e–5, in addition to being based on 42 U.S.C.A., §§ 1981 and 1983, and the consent decree. This theory is without merit.

Intervention would not result in the loss of substantive or procedural rights under Title VII. It will result in better management of the pending *Birdie Mae Davis* class action. It will enable the district court to consider Buskey's Title VII rights alone, as well as in conjunction with rights which may be due him under other statutes and under the consent order. Intervention will serve to avoid a proliferation of litigation over

the same subject matter, and is within the spirit of Rule 24(b), F.R.Civ.P.[5] The same reasoning, which supported our prior decisions requiring intervention, is supportive of requiring that a Title VII plaintiff-school employee likewise intervene. Lastly, our policy of required intervention is analogous to the discretionary power in the court to require consolidation. *See* Rule 42(a), F.R.Civ.P.[6]

■ In the nature of a fallback position, Buskey urges that at least his case should have been consolidated with the *Birdie Mae Davis* case. The difference between consolidation and intervention in the context of this type proceeding is semantical in nature—with any difference being gossamer. As an intervenor, Buskey will be entitled to the full panoply of Title VII law as it has developed since the passage of the Act in 1964.

This means that both the Foster and Buskey suits are pending in intervention and are awaiting trial. This fact points to the importance of disposing of the interlocutory appeals which were allowed to determine the validity of the orders denying disqualification under § 144, *supra*.

#### NOS. 75–1312 AND 75–1827

The separate motions of Foster and Buskey to disqualify Judge Hand and the supporting affidavits will be considered as one matter. The affidavits rest on facts brought to the attention of affiants by their counsel. In the main, the claim of bias centers on problems of counsel (Mr. Blacksher), in this litigation, and in *Union Carbide Corporation, supra*, where Judge Hand was of the opinion that overtones of barratry and champerty were present. An appeal in that case is pending in this court. No. 75–1008— *Robinson v. Union Carbide Corporation*.

5. Rule 24(b):

Upon timely application anyone may be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . .

6. Rule 42(a):

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

That opinion speaks for itself. Whether the district court was in error in its opinion there will be decided on that appeal and the record therein.

Bias and prejudice is also alleged by affiants to rest on Judge Hand's order of August 16 wherein he granted the protective order relative to the *Birdie Mae Davis* interrogatories and the contempt motion.[7]

The sequence of lawyers is of importance. The Foster suit was filed by the lawyer for the NEA who appeared in *Lee v. Macon County Board of Education (Conecuh County), supra*; and *National Education Assn. v. Board of School Commissioners of Mobile County, supra*. It was this lawyer who failed to follow these decisions in filing the Foster suit. After dismissal he filed the suit in intervention. He filed the interrogatories and attempted to impose a class action on the *Birdie Mae Davis* class. He was not a lawyer in the *Birdie Mae Davis* cause. He was not in the *Robinson v. Union Carbide* case. The affidavits of Foster and Buskey do not assert bias and prejudice against Judge Hand because of any problem between this lawyer and Judge Hand.

On July 2, 1974, Mr. Blacksher joined as co-counsel in filing the motion to compel answers to the interrogatories, and has taken the lead in the Foster case since that time. He is also counsel for Buskey. The NAACP Legal Defense Fund lawyers joined as counsel only in the *Birdie Mae Davis* aspects of the litigation and Mr. Blacksher is the lead counsel in that matter. It is Mr. Blacksher who is involved as counsel in the *Robinson v. Union Carbide* case but Judge Hand included the Legal Defense Fund along with Mr. Blacksher in the barratry and champerty portion of his opinion. We will thus assume that the charge of bias and prejudice is positioned on Judge Hand's references to both Mr. Blacksher and the Legal Defense Fund.

From these events, affiants concluded that Judge Hand was necessarily biased and prejudiced against them because he was biased and prejudiced against their lawyers, and through them, against those represented by them. We find no error in the refusal of Judge Hand to disqualify himself.

Section 144 requires "personal bias or prejudice" against a party.[8] No bias or prejudice personal to Foster and Buskey is set out. They seek disqualification on an imputation theory—the bias against their lawyer is imputed to them.[9] Read broadly, this peremptory challenge type approach would bid fair to decimate the bench. Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will.

One answer is that "party" as used in § 144 does not include counsel as such. *Cf. United States ex rel. Wilson v. Coughlin*, 7 Cir., 1973, 472 F.2d 100, 104; *Giebe v. Pence*, 9 Cir., 1970, 431 F.2d 942,

---

7. One portion of the order reflects on original counsel in his effort to create a class action. The portion of the order which reflects on Mr. Blacksher is as follows:

   ". . . In a not too veiled effort to circumvent this Court's ruling thereon, [the *Foster* case] plaintiff's counsel has now, through the aegis of *Birdie Mae Davis*, attempted to propound the same set of interrogatories in an effort to elicit the same information and try to build a case on behalf of unknown others whom this Court has not been shown exist. Such subterfuge borders on the edges of contempt."

8. § 144:

   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

   The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

9. No. 75–1779, *Jones v. Callaway*, pending in this court on interlocutory appeal, involves a like challenge.

943. On the other hand, there could be a case where the cause of the controversy with the lawyer would demonstrate bias of such a nature as to amount to a bias against a group of which the party was a member—*e. g.*, all Negroes, Jews, Germans, or Baptists. This then would be bias of a continuing and "personal" nature over and above mere bias against a lawyer because of his conduct.

We find no such lawyer-to-client constructive bias in this record. The controversy is not over race but over the employment of the class action device and its ramifications in litigation. Rule 23, F.R.Civ.P. It is true that plaintiffs are Negroes and that their counsel handles civil rights cases, but the connection between the judge and the claim of bias on behalf of the particular parties here is too attenuated to require disqualification.

■ Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matters alleged. *See Berger v. United States*, 1921, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; *United States v. Roca-Alvarez*, 5 Cir., 1971, 451 F.2d 843, 847–48; *United States v. Townsend*, 3 Cir., 1973, 478 F.2d 1072. The affidavits were found legally insufficient here and we agree. The truth of the matters alleged was not in issue. These were in substance lawyer motions as distinguished from party motions.

■ Moreover, aside from the doubtful showing of personal bias by Foster and Buskey, they are foreclosed for another reason. It is settled that the requisite basis of bias and prejudice under § 144 must be extra-judicial. *See United States v. Grinnell Corp.*, 1966, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778, 793; *Berger v. United States*, 1921, 255 U.S. 22, 31, 41 S.Ct. 230, 65 L.Ed.

481, 484. The controversy with the lawyers in the present case was not extra-judicial. Rather, it was very much judicial, consisting of language in an order in the very case before the court, and in an opinion in another case before the court. Such statements are not available as grounds for a § 144 affidavit. *See United States v. Board of School Commissioners*, 7 Cir., 1974, 503 F.2d 68, 81; *Hanger v. United States*, 8 Cir., 1968, 398 F.2d 91, 101; *Mirra v. United States*, 2 Cir., 1967, 379 F.2d 782, 787–88; *Tynan v. United States*, 1967, 126 U.S.App.D.C. 206, 376 F.2d 761, 764–65; *In re Union Leader Corp.*, 1 Cir., 1961, 292 F.2d 381, 388–89.

■ Here again, however, we think there is an exception where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party. But, as stated, *supra*, we find an insufficient basis for such a finding in the circumstances presented here.

But § 144 is not the end of the matter. The recent amendment of 28 U.S.C.A. § 455, to require disqualification of any judge when "his impartiality might reasonably be questioned," also must be considered.[10]

■■ The office of the procedure under § 144 is to disqualify a judge prior to trial on motion of a party. Section 455 is the statutory standard for disqualification of a judge.[11] It is self-enforcing on the part of the judge. It may also be asserted by a party by motion in the trial court, *Rapp v. Van Dusen*, 3 Cir., 1965, 350 F.2d 806, 809; through assignment of error on appeal, *United States v. Seiffert*, 5 Cir., 1974, 501 F.2d 974; *Shadid v. Oklahoma City*, 10 Cir., 1974, 494 F.2d 1267, 1268, by interlocutory appeal, as here, or by mandamus, *Texaco,*

10. Pub.L. 93–512, § 1, 88 Stat. 1609. § 455 provides, in pertinent part:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, . . .

11. Compare American Bar Assn., 1972, *Code of Judicial Conduct*, Canon 3C.

*Inc. v. Chandler*, 10 Cir., 1965, 354 F.2d 655.

The quoted language, *supra*, in § 455 is new to the federal law of disqualification and we must determine whether Congress intended to overrule the gloss placed on § 144, and impliedly on § 455, by court decisions that it applies only to conduct which runs against a party and not the lawyer, *cf. United States ex rel. Wilson v. Coughlin, supra*, at 104; *Giebe v. Pence, supra*, at 943; *see also*, Annot., 23 A.L.R.3d 1416; and that disqualification results from extra-judicial conduct rather than from matters arising in a judicial context. *See United States v. Grinnell Corp., supra*, 384 U.S. at 583, 86 S.Ct. 1698, 16 L.Ed.2d at 793; *United States v. Board of School Commissioners, supra*, at 81; *Hanger v. United States, supra*, at 101; *Mirra v. United States, supra*, at 787–88; *Tynan v. United States, supra*, at 764–65; *In re Union Leader Corp., supra*, at 388–89. *See generally*, Annot. 2 A.L.R. Fed. 917.

We find no suggestion in the legislative history that these decisions were being overruled or in anywise eroded. The new language was designed to substitute the reasonable factual basis— reasonable man test in determining disqualification for the subjective "in the opinion of the judge" test in use prior to the amendment. *Cf. Kinnear-Weed Corp. v. Humble Oil & Refining Corp.*, 5 Cir., 1971, 441 F.2d 631, 635. It was also intended to overrule the so-called duty to sit decisions. *See Edwards v. United States*, 5 Cir., 1964, 334 F.2d 360. The abuse of sound judicial discretion test continues to obtain on appellate review. H.Rep.No.93–1453, 1974 U.S.Code Cong. & Admin.News pp. 6351, 6355.

Construing §§ 144 and 455 *in pari materia* we believe that the test is the same under both. We thus hold that an appellate court, in passing on questions of disqualification of the type here presented, should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel. The determination should also be made on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context. This means that we give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned.

Here, we have judicial activity toward lawyers without more and the result under §§ 144 and 455, considered separately and together, is that we find no error.

### NO. 74–3894

This is the appeal from the order denying the motion of the *Birdie Mae Davis* plaintiffs for an order requiring the defendants to show cause why they should not be held in contempt for violating the July 9, 1971 consent decree. This is an appealable order. *Gilbert v. Johnson*, 5 Cir., 1974, 490 F.2d 827.

The motion rested for cause on the allegations contained in the Foster and Buskey claims. These claims are pending and will be processed on remand. The appertaining facts will be developed. Once developed, they may or may not be sufficient to support a show cause order in the underlying cause. In any event, the motion was decidedly premature when made. The district court did not err in refusing to reopen the *Birdie Mae Davis* case on the bare claims of Foster and Buskey, either for purposes of contempt or discovery.

The claim of the right to monitor by discovery or more appropriately, to have the court monitor, the 1971 decree was, for the same reason, premature. (We are not told if monitoring is being accomplished in the form of reporting. *See, e. g.*, the report required in *United States v. Hinds County School Board*, 5 Cir., 1970, 433 F.2d 611, 618–19.)

### DISCOVERY ON REMAND

The Buskey case has not reached the discovery stage but we can assume that

it is in the same posture as Foster's. In the early days of Foster's case, the district court ordered that discovery be limited to matters germane to his claim. No further effort was made to discover on his behalf.

It would have been and will now be only a slight task to modify the interrogatories which were filed so that they may be used on behalf of Foster and Buskey. They are assistant principals. They contend that they were denied promotions to requested principalships. They will be entitled to full discovery with respect to the category of position or positions sought in an effort to establish all statistical, policy and practice data of relevance to their claims. The teaching of *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, should be the district court's guide in allowing full discovery.

Affirmed.

## APPENDIX A

### AFFIDAVIT

STATE OF ALABAMA ⎫
⎬ ss
COUNTY OF MOBILE ⎭

Edwin Foster, being first duly sworn, deposes and says as follows:

I am a plaintiff-intervenor in the above-styled cause and am filing this Affidavit pursuant to 28 U.S.C. § 144 to request that the Honorable W. Brevard Hand disqualify himself from presiding over any and all proceedings in this action on the grounds that he has a personal bias or prejudice against me and other black parents, school children and school teachers in the Mobile school system as members of the plaintiff class.

This action was commenced in 1963 through the filing of a complaint seeking the desegregation of the public schools in the City of Mobile. Until 1971, the case was presided over by the Honorable Daniel Thomas, who subsequently retired. Following a remand of this case from the Supreme Court of the United States in June of 1971, a consent decree was entered instituting a plan for the desegregation of the schools in the city of Mobile. Subsequent to the entry of that decree a variety of other matters have arisen in the case. There is presently pending before the Court a motion for summary judgment relating to the complaint in intervention filed by Edwin Foster, a motion for reconsideration of an order awarding attorney's fees and other matters regarding implementation and evaluation of the desegregation plan.

On September 26, 1974, at the request of my counsel, J. U. Blacksher, Esq., I read for the first time the opinion of Judge Hand rendered on August 29, 1974, in *Robinson v. Union Carbide Corp.*, Civil Action No. 7583–73–H. a copy of which is attached hereto. At the same time, my counsel also called my attention to the Order entered by Judge Hand in the present case on August 16, 1974, relating to a Motion for Protective Order and a Motion to Show Cause. In that order various allegations were made concerning said counsel and concerning the wishes of members of the class and the parties to this litigation. On September 20, 1974, Judge Hand denied our motion to strike these allegations. On information and belief, and based upon a reading of the above-mentioned opinion and order, Judge Hand is biased and prejudiced against me personally because I am a person seeking redress of violations of my civil rights through an action in Federal Court. In particular, Judge Hand is biased and prejudiced against anyone or any group of persons including myself, presenting such claims through attorneys employed by and/or associated with the N.A.A.C.P. Legal Defense and Educational Fund, Inc., in that Judge Hand believes and has in fact formed the opinions through extra-judicial sources:

1. that persons who are plaintiffs in such actions do not have valid grievances but have been solicited to present unwarranted claims;

2. that claims are not presented by the above attorneys in good faith but

rather for invalid and unconscionable purposes; and

3. that I and other black persons assisted by the above attorneys should be watched with suspicion as being capable of causing other black people in the community to engage in "concerted efforts," such as the manipulation of employment applications.

The result of these firmly held opinions by Judge Hand is that he cannot and will not judge my claims on the merits and according to the law but will decide them adversely regardless of the facts adduced at trial and regardless of the law. These opinions that he has formed concerning such claims and concerning the actions and motives of the attorneys presenting such claims do not allow him to have impartiality of judgment.

This Affidavit was not filed earlier because until the date set out above I had not read the decision in the *Robinson* case.

s/ Edwin Foster

Subscribed and sworn to before me on this the 26th day of September, 1974.

s/ Barbara Matthews

NOTARY PUBLIC,
MOBILE COUNTY, ALABAMA

I am one of the attorneys representing Edwin Foster in this cause. I certify that this affidavit is made in good faith.

s/ J. U. Blacksher

J. U. BLACKSHER