UNITED STATES of America, Plaintiff,

v.

The STATE OF ALABAMA; et al., Defendants.

Civ. A. No. CV 83–C–1676–S.

United States District Court,
N.D. Alabama, S.D.

March 16, 1984.

Frank W. Donaldson, Caryl P. Privett, Birmingham, Ala., William French Smith, Atty. Gen., Wm. Bradford Reynolds, Asst. Atty. Gen., Thomas H. Keeling, Nathaniel Douglas, Franz Marshall, Harvey L. Handley, III, Jeanne K. Pettenati, Jay P. Heubert, Levern M. Younger, General Litigation Section, Civil Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

Ronald W. Wise, Ira De Ment, De Ment & Wise, Montgomery, Ala., for Wallace, Alabama Commission of Higher Ed. and Ala. Public School & College Authority.

Walter J. Merrill, Anniston, Ala., for Jacksonville State Univ.

Joe R. Whatley, Jr., John C. Falkenberry, Stewart, Falkenberry & Whatley, Birmingham, Ala., for Board of Trustees for Alabama A & M.

## OPINION ON MOTIONS FOR RECUSAL

DYER, Senior Circuit Judge, Sitting by Designation.

The United States instituted this action against the State of Alabama and its state institutions of higher learning, including Auburn University, alleging that the defendants are maintaining and perpetuating racial segregation. The case was routinely and randomly assigned to Judge U.W. Clemon. Auburn University and Wayne Teague, the State Education Commissioner, filed motions to disqualify Judge Clemon pursuant to 28 U.S.C. §§ 144 and 455.

Judge Clemon did not reach the sufficiency of the affidavits' averments but denied the motions because the affidavits were executed by counsel instead of the parties. Auburn and Teague then filed a motion for reconsideration accompanied by affidavits properly executed by the parties. Judge Clemon denied the motion on the ground that § 144 permits a party to file only one affidavit in any case.

After a hearing, Judge Clemon, by opinion, denied the motion based upon § 455. On petition for Mandamus by Auburn and Teague, the Court of Appeals, without expressing any opinion on the ultimate question of disqualification, remanded the case

"with directions that another judge be assigned to hear the recusal proceedings." [1]

The identical affidavits filed by Auburn and Teague generally allege three grounds for disqualification which may be summarized as follows:

1. Judge Clemon's minor children are possible members of a class of black school children seeking to intervene, suggesting the possibility of the appearance of a personal interest in the outcome of the case.

2. While in private practice Judge Clemon appeared as attorney of record for individual plaintiffs in a statewide desegregation case which may have provided him with access to factual matters disputed in the present case.

3. Judge Clemon's prior association with former Senator Stewart, who is now a member of the firm representing Alabama A & M in this action, creates the "possibility of the appearance of personal bias."

For the reasons discussed hereafter, the averments of the affidavits are insufficient, as a matter of law, to require disqualification under § 144. The affidavits, together with the evidence presented, also fail to support disqualification under § 455. Accordingly, the motions are denied and the case is reassigned to Judge Clemon for disposition of the case on the merits.

## THE LEGAL SUFFICIENCY OF DEFENDANT'S AFFIDAVITS UNDER 28 U.S.C. § 144.

▮▮▮ Section 144 [2] requires a district judge's recusal when a party files a "timely and sufficient" affidavit alleging personal bias or prejudice against that party or in favor of an adverse party. *Parrish v.*

*Board of Commissioners,* 524 F.2d 98, 100 (5th Cir.1975, *en banc*), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). An affidavit in this circumstance is legally sufficient only if it sets forth facts and reasons for the party's belief "which give fair support to the charge of a bent of mind that may impede impartiality of judgment." *Parrish,* 524 F.2d at 100 (quoting *Berger v. United States,* 255 U.S. 22, 23 (1921)). Further, the judge must assume the truth of the matters alleged and limit his determination to the legal sufficiency of the averments. *See Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; *Davis v. Board of School Commissioners,* 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

Since § 144 requires recusal merely on the basis of a party's belief that a judge is biased, without questioning the veracity of the affiant's allegations, it invites abuse. Thus, the statutory standards for compliance are strictly construed. In *United States v. Haldeman,* the court detailed the stringent requirements for legal sufficiency under § 144:

Section 144 specifies that "[t]he affidavit supporting a motion thereunder 'shall state the facts and the reasons for the belief that bias or prejudice exists;'" and it does so for the best of reasons. This provision, like the accompanying mandate that counsel of record certify that the affidavit is made in good faith, was designed to guard against groundless claims and the impositions they would inflict on the judicial process. To achieve that end, the courts have consistently

---

1. For the reasons explicated at the hearing on the motions this court held that it would hear, consider and decide the question of disqualification under both 28 U.S.C. §§ 144 and 455.

2. Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. 28 U.S.C. § 144 (1976)

held that the affidavit must meet exacting standards. It must be strictly construed; it must be definite as to time, place, persons and circumstances. Assertions merely of a conclusionary nature are not enough, nor are opinions or rumors. And the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."

559 F.2d 31,134 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). (footnotes omitted).

In addition, the strength of the averments is tempered by a presumption of the judge's impartiality. "Since a judge is presumed impartial, the party seeking recusal has a substantial burden to overcome the presumption with factual allegations of personal bias stemming from extra-judicial source." *United States v. Baskes,* 687 F.2d 165, 170 (7th Cir.1981).

To determine whether disqualification is required under § 144, the allegations contained in the affidavits of Auburn and Teague must be scrutinized. If they support "the charge of a bent of mind that may prevent or impede impartiality of judgment" on any of the three grounds raised by the affidavits, recusal is required.

■ An analysis of the sufficiency of the allegations must begin with the test adopted by the Fifth Circuit in *Parrish.* There the court, quoting *United States v. Thompson,* set forth the three requirements for a legally sufficient affidavit as follows:

"In an affidavit of bias, the affiant has the burden of making a three-fold showing:

1. The facts must be material and stated with particularity;

2. The facts must be such that, if true they would convince a reasonable man that a bias exists;

3. The facts must show the bias is personal, as opposed to judicial, in nature."

524 F.2d at 100 (quoting *United States v. Thompson,* 483 F.2d 527, 528 (3d Cir.1973).

Application of the *Parrish* test to the present affidavits demonstrates their failure to state material facts with sufficient particularity to convince a reasonable man that a personal bias exists. The affidavits begin by stating that "the judge before whom the cause is pending has a personal bias or prejudice either against said defendant or in favor of parties to the action whose interests may be adverse to such defendant." This initial conclusory allegation is "general or impersonal" at best and is insufficient to allege the requisite personal bias for disqualification. *See, Parrish,* 524 F.2d at 101. It is unclear what is alleged: bias against Auburn and Teague or in favor of the plaintiff. The confusion persists through the affidavits. The remaining averments generally allege three grounds for disqualification.

Judge Clemon's Involvement in *Lee v. Macon County Board of Education.*[3]

■ *Lee v. Macon* was a massive school desegregation case instituted against the State of Alabama in 1970. It involved ninety-nine school systems, all of the trade schools and junior colleges, plus four of the four-year institutions named as defendants in the present case which were at one time subject to the control of the State Board of Education. The averments detailing Judge Clemon's involvement in *Lee v. Macon* may be summarized as follows:

1. Judge Clemon, while in private practice appeared as attorney of record for individual plaintiffs.

2. *Lee v. Macon* included claims under Title VI of the Civil Rights Act of 1964 against institutions of higher learning in Alabama involving claims of racial discrimination during periods of time relevant to the present case.

3. Judge Clemon, and the law firm that he was associated with, received copies of all pleadings, paid a filing fee for a Notice of Appeal, and provided

---

**3.** Civil Action No. 70–251, N.D.Ala.

other assistance in securing the appeal.

4. Judge Clemon was involved in the case, as an attorney, as early as 1971.

5. Certain state colleges named as defendants in *Lee v. Macon* are named as defendants in this action. Jurisdiction over these defendants was transferred to the Northern District of Alabama on May 30, 1972.

6. Since the transfer, the court file relating to these defendants "are not closed, but have vitality and are currently assigned to various judges for supervision of work."

7. From 1967 through 1968 Judge Clemon, while a law student, was employed by the NAACP Legal Defense and Education Fund, a leading force in the *Lee v. Macon* litigation in the Middle District of Alabama.

8. As a result of his role as attorney of record in *Lee v. Macon* and his employment by the Defense Fund, Judge Clemon had access to disputed factual matters allegedly relevant in the case at bar concerning conduct by institutions of higher learning in the State of Alabama, including many of the present defendants.

These allegations present a general claim lacking in the particularity necessary, under the *Parrish* test, to convince a reasonable man that bias exists. The allegations concerning Judge Clemon's involvement in *Lee v. Macon* are limited to appearing as attorney of record, paying of a filing fee and assisting in obtaining an appeal. The affidavits fail to state for which plaintiffs Judge Clemon was "attorney of record". Given the magnitude of the case, it is likely as not that the interests of plaintiffs represented by Judge Clemon were completely isolated from any claim which affected institutions of higher learning, including Auburn. Auburn and Teague claim only that "the action [*Lee v. Macon*] included claims of racial discrimination against institutions of higher learning in the State of Alabama." *Lee v. Macon* was not limited to

claims against institutions of higher learning and the affidavits fail to allege any facts which would connect Judge Clemon to that aspect of the case.

The affidavits do not demonstrate a personal bias on the part of Judge Clemon. Rather, they allege that he had *access* to disputed facts relevant to the present case. The affidavits do not indicate what facts Judge Clemon had access to or how they are relevant to the present case. They do not even suggest enough details to indicate that the facts that Judge Clemon had access to are of the nature that would affect his impartiality or cause a personal bias. The affiants merely allege that Judge Clemon had some contact with an unidentified aspect of the case through his representation of individual plaintiffs and that prior to the filing of the action, while Judge Clemon was a law student, he was employed by an agency that was a motivating factor in bringing the action. These allegations do not support or even suggest the personal bias required. Affiants' reliance on *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) is misplaced.

Grinnell simply precludes disqualification where the bias alleged is not extrajudicial. While the bias alleged is admittedly extrajudicial in the present case, it is insufficient to establish a personal bias under the *Parrish* test. At most, the allegations support only the inference that Judge Clemon's background as a civil rights attorney and his race cause him to be inherently biased and incapable of rendering an impartial decision in a school desegregation case.

▪ A claim that is essentially an allegation based on the judge's background and which states no specific facts that would suggest he would be anything but impartial in deciding the case before him is insufficient. *Parrish*, 524 F.2d at 101. In *Parrish*, the trial judge was not disqualified from a racial discrimination case even though he had been president of a bar association whose charter barred black members. The court in *Parrish* held that

the factual base alleged for recusal did not raise an inference of personal bias or prejudice. *Id.* The fact that Judge Clemon has represented plaintiffs in racial discrimination actions provides no additional support for the claim of bias. The facts set forth in the affidavits

> " . . . show no personal bias on the part of the judge against any of the defendants, but, at most, zeal for upholding the rights of Negroes under the Constitution and indignation that attempts should be made to deny them their rights. A judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence."

*Baskin v. Brown,* 174 F.2d 391, 394 (4th Cir.1949).

The question underlying the allegations in the present affidavits is whether a black judge should be disqualified *per se* from adjudicating cases involving claims of racial discrimination. *Pennsylvania v. Local Union 542,* 388 F.Supp. 155, 165 (E.D. Pa.1974). It is clear that a judge's color, sex or religion does not constitute bias in favor of that color, sex or religion. *See Menora v. Illinois High School Assoc.,* 527. F.Supp. 632 (N.D.Ill.1981); *Blank v. Sullivan and Cromwell,* 418 F.Supp. 1, 4 (S.D. N.Y.1975). In *Pennsylvania v. Local Union 542,* Judge Higginbotham denied a motion seeking his recusal from an employment discrimination case on the ground that he exercised a "significant role as a spokesman, scholar and active supporter of the advancement of the causes of integration." 388 F.Supp. at 157. Judge Higginbotham noted that requiring black judges to recuse themselves from racial discrimination cases would result in a double standard within the federal judiciary. *Id.* at 165. The allegations of the present affidavits only illustrate that Judge Clemon, like Judge Higginbotham, is an active supporter of "the cause of integration" and fail to show a personal bias against Auburn, Teague or any of the present defendants.

Judge Clemon's Children as Possible Class Members.

The affidavits allege that Judge Clemon has two minor children who are members of a putative class seeking to intervene in this action. The class includes students matriculating in institutions located in the State of Alabama and presently studying in grades commonly known as elementary or high school. The defendant suggests "the possibility of the appearance of a personal interest in the outcome of the action" created by Judge Clemon's failure to disqualify himself under the circumstances.

As previously noted, § 144 plainly requires an allegation of personal bias, not the appearance of a personal bias or personal interest. The fact that Judge Clemon has two children of school age in the State of Alabama who may indirectly benefit from a ruling adverse to the defendants in this action should not convince a "reasonable man that a bias exists." *Parrish,* 524 F.2d at 100. The interests claimed are too tenuous and remote. There is no allegation that Judge Clemon's children intend to enroll in any of the defendant institutions of higher learning. The class of intervenors, not yet certified, includes nearly every black child in Alabama. Defendants would suggest then that every black judge, with minor children in the state, would be precluded from presiding in a school desegregation case. This reasoning once again suggests only an inference of inherent bias based upon the judge's race.

Judge Clemon's Prior Association with Former Senator Stewart.

The final ground for disqualification raised in the affidavits allege that Judge Clemon's relationship with former Senator Stewart, who is now a member of the firm representing Alabama A & M in this action, creates the "possibility of the appearance of personal bias." This allegation fails under § 144 because it only alleges the appearance and not the existence of personal bias as required under the *Parrish* test. The facts contained in the averment do not otherwise support the allegation.

Auburn and Teague allege that during his tenure as a United States Senator from Alabama, Mr. Stewart sponsored the nomi-

nation of Judge Clemon to the Federal Bench. They also state that "Mr. Stewart was so actively involved in Judge Clemon's nomination to the Bench that the American Bar Association criticized Judge Clemon" for making a $500 political contribution to Mr. Stewart. Although Alabama A & M was originally a defendant in this action, it now seeks to be realigned as a plaintiff. Affiants assert that the primary factor motivating the request to be realigned is that as a plaintiff, Alabama A & M would have attorney's fees available as a form of relief. The affidavits further allege that in formulating the appropriate award of attorney's fees, Judge Clemon would be required to consider the reputation and quality of legal work performed by former Senator Stewart's firm.

■ Section 144 requires recusal when personal bias or prejudice against that *party* or in favor of an adverse *party* is alleged. *See, Parrish*, 524 F.2d 98. A party as used in § 144 does not include counsel as such. *Davis v. Board of School Commissioners*, 517 F.2d 1044 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). In *Davis*, intervenors filed affidavits alleging bias based upon a controversy between the judge and the affiants' attorney. The court found the affidavits legally insufficient because there was no basis for imputing bias against the attorney to the affiants. *Id.* at 1051.

In sum, this court finds the averments of the affidavits, taken as true, are facially insufficient to show personal bias or prejudice of Judge Clemon.

We now turn to the motions for recusal of Judge Clemon under § 455.[4] Auburn bases its § 455[5] claims on the three grounds raised in its § 144 affidavit and on several additional grounds. Auburn supplements its *Lee v. Macon* claim by pointing out two other instances where Judge Clemon, while in private practice was involved in an adversary proceeding involving allegations of racial discrimination in higher education. Auburn also contends that public statements made by Judge Clemon concerning the recusal proceedings demonstrate "a personal bias concerning a party", and that the judge's "impartiality might reasonably be questioned" as a result of these statements, together with publicity surrounding the recusal efforts. Each of these assertions, discussed hereafter individually, fail to support an independent basis for disqualification under § 455. The fact that multiple grounds have been raised fails to buttress the claim. As Judge Arnow stated in *Miller Industries v. Caterpillar Tractor Co.*:

[4.] The motions of Auburn and Teague for recusal under this section are identical. For the sake of brevity we refer simply to Auburn.

[5.] § 455 of 28 U.S.C. (1976) provides in pertinent part:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any *proceeding* in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

In determining the necessity for disqualification, all circumstances bearing upon it should be considered. But that does not mean that various circumstances, each insufficient standing alone, mandates sufficiency in total. Under the factual situation here presented, holding that these various circumstances in combination require disqualification would be tantamount to holding that adding several zeros together would produce something more than zero.

516 F.Supp. 84, 87 (S.D.Ala.1980).

Judge Clemon's Participation in Adversary Proceedings Involving Charges of Racial Discrimination in the State's Education System.

In addition to *Lee v. Macon,* Auburn notes Judge Clemon's involvement in the *Afro-American Association of the University of Alabama v. Bryant,* CA. No. 69–422 (N.D.Ala.), and *In re Alabama Educational Television Commission,* Docket No. 20276. Auburn contends that Judge Clemon's involvement in each of these cases provides an independent basis for disqualification under § 455.

■ Section 455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Section 455, unlike § 144, does not require the judge to accept all allegations as true. *Phillips v. Joint Legislative Committee,* 637 F.2d 1014, 1019 n. 6 (5th Cir.1981), *cert. denied* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982). Nevertheless, the standard under § 455(a) is stricter than § 144. *Id.* While § 144 requires allegations sufficient to convince a reasonable man that bias exists, under § 455(a) the allegations must show only that a reasonable person would harbor doubts about the judge's impartiality. *Id.* In determining when the appearance of impropriety might occur under § 455(a), the reasonable person test is used. *Huff v. Standard Life Insurance Co.,* 683 F.2d 1363 (11th Cir.1982). "The reasonable person is presumed to possess knowledge of all the circumstances" under § 455. *Id.*

Consideration of all the facts and circumstances surrounding each of these claims dispells all reasonable doubts as to Judge Clemon's impartiality.

■ The facts demonstrate that the *Lee v. Macon* case is not the same "matter in controversy" under § 455(b)(2) and that Judge Clemon did not have access to disputed evidentiary facts under § 455(b)(1). Auburn argues that the claim of plaintiff in the present action that the State of Alabama has conducted a dual system of higher education since 1953 makes the conduct of other defendants, not Auburn, who were named as defendants in *Lee v. Macon* relevant to the present case. Auburn contends that by representing plaintiffs in *Lee v. Macon,* Judge Clemon was dealing as attorney with some of the facts that are in dispute now. This claim is without foundation.

Judge Clemon's testimony reveals that he became involved in parts of *Lee v. Macon* only after it was fragmented into nearly 100 separate actions and divided among various districts and divisions in the state. At that point *Lee v. Macon* was logically and legally many different cases. Judge Clemon stated that he never participated in aspects of the case involving higher education. His involvement was limited to the public school systems of Sumnter County and the City of Anniston. Each of the separate school systems included in *Lee v. Macon* have been treated separately since the transfer.

When the college and university aspect of *Lee v. Macon* was transferred to the Northern District of Alabama, the only present defendant remaining under the control of the State Board of Education was Alabama A & M University. Since the transfer in 1972, the only action involving the institutions of higher learning was the severance of a complaint in intervention against Livingston University.

Auburn relies on *W. Clay Jackson v. Greyhound Leasing,* 467 F.Supp. 801 (D.P. R.1979), for the proposition that access to information requires recusal under § 455.

In *Clay*, the trial judge admitted that a reasonable doubt had been created in his own mind that facts may have come into his knowledge while acting as labor counsel to one of the parties. *Id.* at 803. Clay may be distinguished from the present case because Judge Clemon has expressly disavowed any knowledge of facts in *Lee v. Macon* pertaining to institutions of higher learning.

In *Laird v. Tatum*, 409 U.S. 824, 829, 93 S.Ct. 7, 10, 34 L.Ed.2d 50 (1972), Justice Rehnquist refused to recuse himself although he had been a witness for the Justice Department in Senate hearings inquiring into the same subject matter. In so doing, he noted that none of the Supreme Court Justices since 1911 had followed a practice of recusing themselves in cases involving points of law with respect to which they had expressed an opinion or formulated a policy prior to ascending the Bench. *Id.* at 831, 93 S.Ct. at 11.

Even applying the objective standard of § 455(a), a reasonable man knowing all of the circumstances would not believe Judge Clemon's involvement in *Lee v. Macon* could have provided him with personal knowledge of disputed facts or otherwise create a doubt as to his ability to remain impartial. The allegations concerning Clemon's employment as a librarian at the NAACP Legal Defense Fund add no weight to Auburn's argument. Judge Clemon has denied acquiring any knowledge of any facts involving *Lee v. Macon* while so employed. It would seem unlikely that Judge Clemon's employment as a law student librarian would cause a reasonable person to "harbor a doubt as to the Judge's impartiality." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.1980), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

According to the Report of the House Judiciary Committee, the 1974 amendments to § 455 were designed to bring the statutory grounds for disqualification into conformity with Canon 3 of the Code of Judicial Conduct which requires a judge to disqualify himself if there is a reasonable factual basis for doubting the judge's impartiality. H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 6351, 6352–55. The report noted, however, that "[D]isqualification must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial." *Id.*

Judge Clemon's involvement in *Lee v. Macon*, as well as the other noted adversary proceedings, does not evidence any basis for imputing a lack of impartiality or appearance of bias on the part of Judge Clemon, but rather, indicates the possibility of a particular judicial leaning. Allegations of such predispositions based upon background alone is insufficient to support disqualification. *See Phillips*, 637 F.2d at 1021; *Blank v. Sullivan and Cromwell*, 418 F.Supp. at 4; *Pennsylvania v. Local Union 452, International Union of Operating Engineers*, 388 F.Supp. at 159.

The Afro-American Claim

Auburn amended its Motion to Disqualify to include the allegation that Judge Clemon's representation of plaintiffs in the *Afro-American Association of the University of Alabama v. Bryant* requires disqualification under § 455. *The Afro-American* action was filed on July 2, 1969 and was dismissed with prejudice on May 10, 1971. The complaint alleged that the University of Alabama was failing to recruit black athletes and was failing to award them scholarships. The plaintiffs charged violation of equal protection under the Fourteenth Amendment and requested injunctive relief to require the university to recruit black athletes and provide them with financial assistance. In addition, an injunction was sought under Title VI of the Civil Rights Act of 1964 against the Secretary of HEW to require him to cut off federal funds if the alleged racially discriminatory practices did not cease.

On March 4, 1970, the court dismissed the Secretary of HEW and the Title VI

claim for failure to exhaust administrative remedies. The case settled before trial.

Auburn claims here, as in *Lee v. Macon* that the *Afro-American* case is the same matter in controversy under § 455(b)(2); that Judge Clemon's participation in *Afro-American* provided him with access to disputed evidentiary facts under § 455(b)(1) and that his involvement in the case would cause his impartiality to be reasonably questioned under § 455(a).

■ The *Afro-American* case and the present case do have the common thread of racial discrimination claims. Nevertheless, the cases, though similar are not the same for purposes of § 455. The *Afro-American* claim presented questions of the denial of equal protection to black athletes by Auburn's policies and practices as they existed thirteen years ago. In contrast the present action challenges the vestiges of *de jure* segregation currently existing in Alabama's institutions of higher learning. Both the legal theories and the relevant facts pertaining to the cases are different. To hold that the actions are the same "matter in controversy" under § 455 would suggest that Judge Clemon is precluded from presiding over any kind of race discrimination claim against Auburn or any of the defendant institutions. Such reasoning overreaches the intent of § 455.

Auburn also claims, under § 455(b)(1) that Judge Clemon, as a result of his role in *Afro-American,* acquired knowledge of disputed evidentiary facts concerning the present proceeding. Auburn has not particularized any such facts and their knowledge cannot be inferred under the circumstances.

The lapse of time, dissimilarity in the claims and lack of overlap in disputed facts makes it unreasonable to conclude that Judge Clemon's impartiality might be questioned. *See School District of Kansas City v. Missouri,* 438 F.Supp. 830 (W.D.Mo. 1977).

The FCC Proceedings

■ Auburn characterizes this claim as the third instance of Judge Clemon's participation in an adversary proceeding involving charges of racial discrimination in the State's Educational system during the relevant time period. This characterization is misleading. Judge Clemon acted as attorney, and later as Chairman of the Board of the Alabama Citizens for Responsive Television (ACRPT). The organization proposed transfers from Auburn University and the University of Alabama to traditionally black colleges, public and private. The Alabama Educational Television Commission (AETC), a state agency, was empowered to control use of channels reserved by the FCC for educational use, to designate locations of stations, to utilize such channels, and to contract with persons including educational institutions for operation of such stations.

In 1975, the FCC found the AETC guilty of a racially discriminatory policy in programming but permitted it to apply for a new license. The actions cited by Auburn relate to ACRPT's competitive petition. Testimony of Wilbur H. Hinton, manager of AECT reveals that AECT is a separate entity from the universities. The relationship between AECT and Auburn is purely contractual. Alabama A & M and other universities have production centers that produce programs for the network. Any racial discrimination charges would thus relate to AECT's activities in programming and purchasing and would have no bearing on university activities.

This claim fails to support any basis for disqualification under § 455.

The Stewart Claim

■ This claim fails under § 455 for the same reasons as stated under § 144. Sections 455 and 144 are to be construed *in pari materia. Davis v. Board of School Commissioners,* 517 F.2d 1044, 1052 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Thus, in passing on the issue of disqualification, the basis of conduct which shows bias or prejudice or lack of impartiality must focus on the party rather than counsel. *Id.* Auburn has not demonstrated any facts which would lead a reasonable man to conclude

that Judge Clemon's association with former Senator Stewart will affect his ability to remain impartial. Unlike the judge in *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.1980), Judge Clemon did not participate with Mr. Stewart in any business ventures; he was not personally represented by Mr. Stewart as an attorney and he has not maintained an ongoing social relationship with Mr. Stewart. *See, Huff v. Standard Life Insurance Co.,* 683 F.2d 1363 (11th Cir.1982).

Judge Clemon's Children

Auburn alleges that Judge Clemon's children, as potential class members, are parties to the present proceedings thus mandating disqualification under § 455(b)(5) and that the children have a substantial interest in the litigation requiring disqualification under § 455(b)(4). Once again, this claim is too tenuous and remote. The class defined sweeps so broadly that it places all judges with school-age children in Alabama in either a class or a counter-class. To employ Auburn's reasoning would require disqualification of all judges with such school-age children. The interests claimed to be affected are uncertain and contingent upon Judge Clemon's children choosing to attend one of the defendant institutions at some unknown date in the future. These interests are clearly not the substantial interests contemplated under § 455.

Publicity Surrounding the Recusal Proceedings.

■ As the final ground for disqualification raised under § 455, Auburn alleges that Judge Clemon has a personal bias or prejudice concerning a party as demonstrated by statements made by Judge Clemon to various newspapers concerning his disqualification by Judge Grooms.[6] Auburn also contends that the statements, together with the publicity surrounding the recusal proceedings, might cause a reasonable person to question Judge Clemon's impartiality under § 455(a).

Judge Clemon's statements to the press do not demonstrate any personal bias or prejudice concerning a party. Clemon's statements are limited to his reasons for denying the disqualification motion and his disagreement with Judge Groom's contrary ruling. Since the statements do not mention the parties, they cannot reflect a personal bias concerning a party. As noted, previously, the standard is the same under §§ 144 and 455. To support an allegation of bias the prejudice shown must be personal concerning a party. *Davis,* 517 F.2d 1052.

■ Publicity alone cannot create a reasonable doubt as to the judge's impartiality under § 455(a). In *In re United States,* 666 F.2d 690, 695 (1st Cir.1981), the court faced with a similar publicity problem concerning recusal proceedings stated that "to the extent the doubts were created by representatives of the press shown to be not grounded in fact, they cannot require disqualification." The mere fact that the issue of disqualification of Judge Clemon has drawn the attention of the media, resulting in extensive coverage, is not, in itself, a good reason to reassign this case. The adoption of this view would lead to judicial abandonment of responsibility for the purity of the judicial process and ultimately undermine the independence and integrity of the courts.

The motions of Auburn and Teague to disqualify Judge Clemon pursuant to §§ 144 and 455 are severally denied.

---

6. Upon remand, the Chief Judge of the Northern District of Alabama assigned this matter to Senior Judge H.H. Grooms. After a hearing, Judge Grooms issued an opinion and order requiring that Judge Clemon be disqualified. On motion for rehearing, Judge Grooms vacated his order and recused himself from any further proceedings.