VIETNAMESE FISHERMEN'S ASSOCI-
ATION, et al., Plaintiffs,

v.

The KNIGHTS OF the KU KLUX
KLAN, et al., Defendants.

Civ. A. No. H-81-895.

United States District Court,
S. D. Texas,
Houston Division.

July 16, 1981.

Morris Dees, Montgomery, Ala., for plaintiffs.

Sam Adamo, Adamo & Cobb, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

McDONALD, District Judge.

This is an action filed by an organization of Vietnamese fishermen and individual Vietnamese fishermen against the Knights of the Ku Klux Klan, the Grand Dragon of the Ku Klux Klan in the State of Texas, certain unknown members of the Ku Klux Klan, the American fishermen's Coalition, various alleged members of that coalition, and several individual American fishermen alleging violations of federal and state statutes. The plaintiffs seek a preliminary and permanent injunction enjoining the defendants from engaging in a variety of alleged unlawful acts of violence and intimidation against the plaintiff class and a declaratory judgment.

The defendants have filed a motion, an affidavit of Defendant Louis Beam and a Memorandum of Law requesting this judge to disqualify herself pursuant to 28 U.S.C. § 455(a) on the grounds of personal bias or prejudice against the defendants in favor of the plaintiffs. A hearing was held and the defendants offered testimony in further support of this motion. Defendants do not urge recusal under 28 U.S.C. § 144 which is the other statute governing recusal of federal judges.

In his affidavit, Mr. Beam, the Grand Dragon of the Ku Klux Klan in the State of Texas, asserts that this judge's impartiality has been demonstrated by her instructing her law clerk to inquire of counsel for the plaintiffs whether they would be intimidated or in any way adversely affected in the presentation of their case if Mr. Beam or other members of the Ku Klux Klan wore their Klan robes at court hearings. The defendant asserts that this inquiry from the Court without the benefit of a motion by the plaintiffs and because he believes that the inquiry was initially directed *ex parte* to counsel for the plaintiffs, evidenced sympathy and sensitivity toward the plaintiffs' personal feelings and conversely shows bias and prejudice against the defendants. In their Memorandum of Law in Support of the Motion for Disqualification, the defendants assert "the judge's legal background as counsel for the NAACP and EEOC has included extensive prosecution and defense of civil rights actions similar to this case brought by plaintiffs." Defendants' Memorandum of Law, p. 4.[1]

The affidavit of defendant Beam states "I am informed and believe, and based on such information and belief, allege that the Honorable Gabrielle McDonald, the judge before whom this cause is pending, has a personal bias or prejudice against the defendants and in favor of the plaintiffs." Beam Affidavit, p. 1. The affidavit then recites certain "facts and reasons for the belief" that essentially assert that the Marshal assigned to the room where depositions were being taken in the federal courthouse told Morris Dees, attorney for the plaintiffs that the court's law clerk, Charles K. Barber wished to speak to him. Mr. Dees then suggested that the Marshal ask the law clerk to come to the deposition room if he wanted to see him. This conversation was in the presence of Sam Adamo, one of counsel for the defendants. The law clerk then appeared and began a conversation with Mr. Dees. Mr. Adamo had walked away, however, when the conversation began, Mr. Dees invited Mr. Adamo to join them and in the presence of both attorneys, the law clerk advised that the court wanted to know if the plaintiffs were intimidated by Louis Beam wearing his Knights of the Ku Klux Klan robe at depositions and would they feel intimidated if he did so at the trial.

At the hearing on this motion, counsel for the defendants called as its witness, Charles K. Barber, the law clerk of Judge McDonald who was referred to in the Affidavit of Defendant Beam. Mr. Barber testified that although he was not the law clerk primarily assigned to the case, he had participated in a conversation in chambers with the Judge concerning the wearing of Klansmen robes by party's witnesses and spectators at the scheduled hearing on the preliminary injunction. Defendant Beam had worn a Klansman robe to his initial deposition and the attorneys for plaintiffs sought a protective order in part because they contended that Mr. Beam was wearing a gun under the robe. Mr. Barber testified that the judge was in Biloxi, Mississippi [at a judicial meeting] and he was responsible for remaining in contact with the attorneys to

---

[1] In considering a motion for disqualification, the Court is aware that the allegations in the affidavit without more, must be accepted as true, although this judge advised Defendant Beam that in fact, she had been a Staff Attorney with the NAACP Legal Defense & Educational Fund, Inc. for approximately two years upon graduation from law school in 1966 and had represented plaintiffs in employment discrimination cases, but had never worked for the Equal Employment Opportunity Commission (EEOC). The allegations in the affidavit would not justify disqualification, this Court merely wanted to set the record straight with respect to my past employment.

determine if additional rulings were needed by the Court. During a telephone conversation with Judge McDonald he was advised that the judge was not aware of the plaintiffs' position with respect to the wearing of Klansmen robes and considered that it would be appropriate to hear from them before making a final determination. On the day in question when Mr. Barber spoke with Mr. Dees and Adamo, the United States Deputy Marshal had advised Mr. Barber that the attorneys wanted to speak with him about one of the witnesses' failure to appear at a scheduled deposition. Mr. Barber went to the deposition room in the federal building to speak with the attorneys about that situation. As he reached the floor where the depositions were being held, counsel for the defendant was leaving, however, Mr. Barber spoke with attorneys for the parties about the witness who failed to appear. After this conversation, counsel for defendant left the area and it occurred to Mr. Barber as an after thought that he might raise the question of the wearing of Klansmen robes in the courtroom. Mr. Barber raised this issue with counsel for the plaintiffs. Before counsel for the plaintiffs responded, he summoned counsel for the defendants. The matter was then discussed with all counsel present. Mr. Barber testified that Judge McDonald did not instruct him to make an *ex parte* contact, but instructed him to make the inquiry and the matter would be discussed in greater detail with the attorneys upon her return.

 It is apparent that defendant Beam was not present during this conversation between the law clerk and the attorneys. However, the Court has accepted his affidavit, notwithstanding obvious hearsay infirmities. Also considered by the Court was defendant Beam's testimony at the hearing on the motion to disqualify. Mr. Beam testified that he became aware that Judge McDonald was black after the filing of the lawsuit and its assignment to her court. He was also aware that as a practicing attorney, she handled civil rights cases. He explained his reasons for feeling that he could not receive a fair trial before this judge stating that "I no more have the

opportunity and confidence that I could get any fairer trial here in front of you than you would feel were you to go before a Ku Klux Klansman who was a judge as a defendant." He explained that this was based on his asserted "knowledge" of the prejudice of "your people against the Klansmen." He further testified that he had been in the Ku Klux Klan for twelve years and that he considered that blacks were prejudiced against the Ku Klux Klan and that this was a strictly unfounded prejudice.

Section 455(a) provides as follows:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The 1974 Amendment of 28 U.S.C. § 455, requiring disqualification when "his impartiality might reasonably be questioned," merely substituted the "reasonable factual basis—reasonable man" test for the subjective "in the opinion of the judge test" applied prior to the Amendment. The test to be applied in construing sections 144 and 455 is the same. *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1052 (5th Cir. 1975). Under § 144, only allegations of "personal" bias of a judge are sufficient to require disqualification. *See In re Corrugated Container Antitrust Litigation*, 614 F.2d 958 (5th Cir. 1980), citing *United States v. Grinnell Corp.*, 384 U.S. 563, 582–83, 86 S.Ct. 1698, 1709–1710, 16 L.Ed.2d 778 (1966); *Berger v. United States*, 255 U.S. 22, 32–33, 41 S.Ct. 230, 232–233, 65 L.Ed. 481 (1921); *United States v. Serrano*, 607 F.2d 1145, 1150 (5th Cir. 1979). For a bias to be personal, and therefore disqualifying, it "must stem from extra judicial source . . . ," *In re Corrugated Container Anti-trust Litigation, supra* at 964 citing *United States v. Grinnell Corp., supra*, 384 U.S. at 583, 86 S.Ct. at 1710; *Berger v. United States, supra*, 255 U.S. at 31, 41 S.Ct. at 232; *United States v. Serrano, supra*, 607 F.2d at 1150; *Davis v. Board of School Commissioners, supra*, 517 F.2d at 1051 and other cases. Allegations that go to the background and associations of the

judge rather than her appraisal of a party personally are insufficient to warrant disqualification. *Parker v. Precision Products Co. v. Metropolitan Life Insurance Co.*, 407 F.2d 1070, 1077–78 (3rd Cir. 1969); *Price v. Johnston*, 125 F.2d 806, 811 (9th Cir.), *cert. denied*, 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750 (1942). *See Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 388 F.Supp. 155 (E.D.Pa.1974) for a discussion of these cases and a thorough analysis of standards to be utilized in considering a motion for disqualification. Both the affidavit of Louis Beam and the testimony elicited by the counsel for defendants are, as a matter of law clearly insufficient to justify my disqualification. The defendants' Motion for Disqualification is, therefore, DENIED.

The Court has the responsibility for the orderly conduct of litigation. Before leaving for Biloxi, Mississippi, the Court had entered an Order granting plaintiffs' Motion for a Protective Order directing that all depositions would be held in the federal courthouse, in the presence of a deputy United States Marshal and that no persons were to bear arms during the deposition. This Motion for a Protective Order was filed after Mr. Beam appeared at a deposition wearing a Klansman robe and counsel for plaintiffs asserted that he had a pistol under the robe. With the issuance of the Order directing the taking of depositions in the federal courthouse, the Court permitted Mr. Beam to wear his Klansman robes and indeed, he did wear them to his deposition in the federal courthouse. It was perfectly reasonable and appropriate for the Court to have made such a determination but the better course would have been to have done so only after receiving input from the attorneys, especially the attorneys for the plaintiffs who had filed an earlier protective order. Although the judge was out of town, in anticipation of her return and further conferences with the attorneys before the hearing on the preliminary injunction, she directed her law clerk to secure this input. This instruction was a judicial act, was a proper exercise of her judicial duties and does not justify her disqualification under 28 U.S.C. § 455(a).

Defendant Beam's testimony at the hearing makes it clear that he sought this judge's disqualification in part (if not the greater part) because of her race and the types of cases she handled as a practicing attorney prior to her becoming a judge. He asserted that he could not receive a fair trial before a black judge. He considered that the judge, because she was black, was prejudiced against him and supported this opinion by testifying that he had heard blacks express unfounded prejudice against the Ku Klux Klan. Although he admitted that he was aware that the judge had represented civil rights litigants as a practicing attorney, he could point to no instance where the judge had ever made any extra judicial statement demonstrating a bias against the Ku Klux Klan. This testimony does not justify disqualification. In the words of Judge Constance Baker Motley, United States District Judge for the Southern District of New York, who served as the Associate Director-Counsel of the NAACP Legal Defense Fund before becoming a federal judge, such background is not grounds for a recusal.

> It is beyond dispute that for much of my legal career I worked on behalf of blacks who suffered race discrimination. I am a woman, and before being elevated to the bench, was a woman lawyer. These obvious facts, however, clearly do not, *ipso facto*, indicate or even suggest the personal bias or prejudice required by § 144. The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination on the part of a law firm, is, therefore, so biased that he or she could not hear the case, comes nowhere near the standards required for recusal. Indeed if background or sex or race of each judge were, by definition, sufficient grounds for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with distinguished law firm or public service backgrounds.

*Blank v. Sullivan & Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y.1975).

In denying the defendants' Motion for Disqualification at the conclusion of the hearing, this Court pointed out the obvious. A litigant in a federal court is not entitled to a judge of his choice, he is only entitled to a fair and impartial judge. This defendant as well as all defendants who appear before this Court is entitled to nothing more and will get nothing less.