Moses LeROY, et al., Plaintiffs,

v.

The CITY OF HOUSTON, et al., Defendants.

Civ. A. No. H–78–2174.

United States District Court, S.D. Texas, Houston Division.

July 31, 1984.

L.A. Greene, Jr., Denise R. Ferguson, Asst. U.S. Atty., Houston, Tex., Jessie Botello, San Antonio, Tex., for plaintiffs.

Robert M. Collie, Jr., City Atty., John R. Whittington, Jr., Asst. City Atty., Houston, Tex., Paul F. Hancock, James L. Hatcher, Jr., Dept. of Justice, Washington, D.C., Craig Washington, Houston, Tex., for defendants.

## MEMORANDUM, OPINION AND ORDER

McDONALD, District Judge.

This Order is entered pursuant to the Court's ruling on June 18, 1984, denying the Defendant City of Houston's Motion To Recuse.[1] After the noon recess of the hearing of June 18, 1984, counsel for the parties advised that they had discussed the settlement of Plaintiff's Motion for Attorneys' Fees and wished additional time to present that proposed settlement to the City Attorney and if approved, to the City Council. The Court adjourned the hearing. The hearing was to be resumed on July 18, 1984, if settlement was not consummated. On July 10, 1984, the City of Houston forwarded for filing a Request for Stay of Proceeding and Petition for Writ of Mandamus with the United States Court of Appeals ordering Judge Gabrielle K. McDonald to vacate her ruling from the bench denying the Petitioner's Motion to disqualify her as presiding judge in Cause No. 78–H–2174 (which is the consolidation of Cause Nos. 73–H–1650, 78–H–2174, and 78–2407 pursuant to the provisions of 28 U.S.C. § 455).[2] The Court has carefully considered the important issues raised by this Motion to Recuse and after a thorough research of the applicable law, the Court is of the opinion that the Motion should be DENIED.

### I. Factual Background

A. Procedure—The cases consolidated for consideration, Civil Action Nos. H–73–1650, H–78–2174, and H–78–2407, are actions arising under the Constitution of the United States and 42 U.S.C. §§ 1983 and 2000d. The cases involve charges of racial discrimination in employment, election practices, and provision for municipal services. Civil Action No. 73–1650, styled *Greater Houston Civic Council, Inc. v. Mann,* is an action challenging the City's at-large system of electing council members on the basis that the system unconstitutionally discriminated against minority voters in the City of Houston by minimizing or diluting their votes. The action was filed in December, 1983 by several individually named plaintiffs. The action was filed as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.[3]

---

1. The Court denied the Motion from the bench and advised counsel that an order was being prepared. This is that Order.

2. The Court was thus apprised that settlement efforts had failed. Judge Gabrielle K. McDonald intends to reply to that Petition for Writ of Mandamus. The purpose of this Order is to consider the claims asserted by the City of Houston in its Motion to Recuse filed on May 2, 1984.

3. Of the three actions, only 73–1650 was filed as a class action. It was apparently filed under Fed.R.Civ.P. 23(b)(2), as no notice, required under Rule (b)(3), was ever sent. *See* discussion *infra.*

The Complaint described the pertinent parties as follows:

D. Your Plaintiffs, H.L. Garner, Mickey Leland, J.L. Marshall, Jr., and Anthony Hall are black citizens of the City of Houston, Harris County, Texas and are residents and qualified voters of the City of Houston. They sue on their own behalf and on behalf of a class composed of black citizens and voters of the City of Houston.

E. Your Plaintiffs, Ben Reyes, Joe Perez, Tony Rodriquez, and Joe Padilla, are Mexican-American citizens of the City of Houston, Harris County, Texas and are residents and qualified voters of the City of Houston. They sue on their own behalf and on behalf of a class composed of Mexican-American citizens and voters of the City of Houston.

F. Your Plaintiffs, Tom Bass, Herman Lauhoff, Bebe Bruce, Mike Noblet, Joe Pentony, Don Horn, John W. Taylor, Jr., John Hughey, and Neil West, are white citizens of the City of Houston, Harris County, Texas and are residents and qualified voters of the City of Houston. They sue on their own behalf and on behalf of a class composed of white citizens and voters of the City of Houston.

The record in C.A. No. 73–1650 reflects that the class action was never certified pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure.[4] In the Memorandum and Opinion dated March 8, 1977 entered by Senior Judge Allen B. Hannay, now deceased, the class was described as "black and Mexican-American Minorities in Houston, Texas." C.A. No. 78–2174, *Le-Roy v. City of Houston*, was brought under the Voting Rights Act of 1965. The case centered on the City's failure to preclear with the Justice Department various annexations and disannexations, and contained a prayer for relief seeking to have

the City adopt a single-member election system for the City Council. The Court in *LeRoy* denied both a Motion for Preliminary Injunction and a Motion to Amend to include in the suit annexations occurring in 1977 and 1978. C.A. No. 78–2407, was brought under the Voting Rights Act and concerned various annexations to the City of Houston.

Civil Action Nos. 78–H–2714 and 78–H–2407 were assigned to Judge Gabrielle K. McDonald pursuant to the equalization of the docket after her appointment to the bench in May, 1979.

Judge McDonald scheduled hearings and conferences on the question of the propriety and the amount, if any, of attorneys' fees to be awarded to counsel for plaintiffs in Cause No. H–78–2174, which was consolidated with H–78–2407. During a hearing in 1983, counsel for plaintiffs advised that they wished to assert as a basis for their award of attorneys' fees services performed in 73–H–1650 and various administrative procedures. The City of Houston advised that it would move to exclude services and the administrative procedures performed in that case. The Court considered it appropriate for each of these actions to be consolidated for the purposes of the hearing on the request for an award of attorneys' fees under 42 U.S.C. § 1988. Thus, 73–H–1650 was transferred from the Honorable Woodrow Seals, Senior Judge for the United States District Court for the Southern District of Texas. By letter dated August 30, 1983, John R. Whittington, Jr., Assistant City Attorney for the City of Houston advised the Court that "as the Court knows, 73–H–1650 was a class action suit and Your Honor was a member of the protected class. This particular problem does not arise in any of the subsequent litigation brought pursuant to the Voting Rights Act because Your Honor was a member of a three-judge panel which was

---

**4.** The City of Houston asserts in its Petition for Writ of Mandamus that "at a pre-trial conference held in his chambers on November 8, 1976, counsel for all parties agreed that the case was a class action on behalf of black and Mexican-American registered voters in the City, and that

the named plaintiffs represented these classes." (City of Houston's Petition for Writ of Mandamus, p. 4). What the class status of white voters, which would include other judges in the Southern District of Texas, may be is unclear.

not addressing substantive issues nor were those cases class actions. Thus, it is only 73–H–1650 that there exists the potential for some conflict." (City of Houston's Motion to Recuse, Exhibit B.) By letter dated December 6, 1983, Judge McDonald responded to Mr. Whittington, advising him that "I do not intend to recuse myself voluntarily. You are, of course, free to file a Motion to Recuse which I would consider at that time." (City of Houston's Motion to Recuse, Exhibit C.) On May 2, 1984, the City of Houston filed its Motion to Recuse. The City contends that Judge McDonald is required to recuse herself under 28 U.S.C. § 455 and Canon 3(C) of the Code of Judicial Conduct.

B. Personal—In 1973, I[5] lived at 4421 Laurel. At that time, I was a registered voter living within the confines of the City of Houston. The precinct in which I lived was predominantly black. In August, 1975, I moved to 3610 Glen Arbor. Glen Arbor is also in the City of Houston; it is located in a precinct that was and is predominantly non-black and non-Mexican-American. In January, 1981, I moved to my current residence, 4402 Meyerwood. I still reside at 4402 Meyerwood, which at all relevant times has been a predominantly

non-black, non-Mexican-American neighborhood. I am not currently a registered voter.[6]

At all relevant times to the litigation, my spouse has been registered to vote at the above-mentioned three addresses. I have no other relatives of voting age in Houston.

## II. Discussion

■ A. Standard—At the outset it is necessary to determine by what standard the motion at bar is to be decided.

The recusal statute, 28 U.S.C. § 455, provides in pertinent part:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

\* \* \* \* \* \*

(b)(5)(i) [Any judge] shall ... disqualify himself ... [when he] or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is a party to the proceeding: ....

The *Code of Judicial Conduct* contains identical provisions.[7] *See* Canon 3. Sec-

---

5. Ordinarily, orders are not drafted in the first person. However, due to the fact that the Motion at bar is addressed to this Court and regards circumstances as an individual, I feel it incumbent upon me to acknowledge and deal with the facts of my particular situation. This is particularly true in light of the fact that a motion to recuse based on the appearance of impropriety is based upon the standards of what a reasonable person would consider to be appropriate judicial behavior in sitting on a case, and that reasonable person is presumed to know all the facts of a situation. *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1165 (5th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), *citing Parliament Ins. Co. v. Manson,* 676 F.2d 1069, 1075 (5th Cir.1982).

6. When I moved to the Meyerwood address, I did not file a change of residence notification, and therefore my registration or lapsed by operation of law. I did not reregister. I have since the filing of the Motion To Recuse submitted a voter registration application.

7. The current wording of § 455 was enacted in 1973. Section 3 of the Act amending § 455

provides that amendments "shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974]. ..." One plausible interpretation of the language quoted immediately above would be that the predecessor to § 455 would govern recusal in actions, such as the one at bar, commenced before December 5, 1974. However, the Fifth Circuit has interpreted this language to mean that "the amended version of 28 U.S.C. § 455 is applicable to a case filed prior to the December 5, 1974, effective date of the amendment, when the trial of the case does not commence until after the effective date." *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1109 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). The trial of the instant case began in November, 1976, and ended December 10, 1976. Thus the amended version of § 455 governs this case because of the precedent of *Potashnick.*

The Code of Judicial Conduct was also amended while this suit was pending in district court. When 73–1650 was filed, the *Canons of Judicial Ethics* governed the professional conduct of federal judges. The *Canons* contained only two provisions regarding disqualification of judges.

tion 455 was designed to "not only avoid impropriety but [sic] avoid the appearance of impropriety." *Hearings on S.1064 To Broaden and Clarify the Grounds for Judicial Disqualification, before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 93rd Cong., 1st Sess. 16 (1971) (statement of Senator Bayh). As Judge Rubin noted, "Judicial ethics reinforced by statute exact more than virtuous behavior, they command impeccable appearance. Purity of heart is not enough. Judges' robes must be as spotless as their actual conduct." *Hall v. Small Business Admin.,* 695 F.2d 175, 176 (5th Cir.1983). The statute is self-enforcing. *Christiansen v. National Savings & Trust Co.,* 683 F.2d 520, 524 (D.C.Cir.1982).[8]

 B. Party—After considering the facts of the case and the applicable law, I have determined that I am not a party to the case at bar. These reasons will be discussed separately.

In the first place, C.A. H–73–1650 was not certified as a class action. Even conceding for the sake of argument that any member of a class in a class action is automatically a "party," the record in this case shows that the class was never certified. This lack of certification is evidenced by both the absence in the record of an order certifying the class, as required under Fed.R.Civ.P. 23(c)(1), and the varying descriptions of the classes in the Complaint, the City's brief in its Petition for Writ of Mandamus, and the Order issued by Judge Hannay that disposed of the case on the district court level.[9] Absent certifi-

cation, no class ever came into being. *See Board of School Commissioners of the City of Indianapolis v. Jacobs,* 420 U.S. 128, 130, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975) (where class action was never certified nor class identified by the district court, case is not class action). If the case at bar is not a class action, I am only a member of a putative class. And according to the Advisory Committee on the Code of Conduct to the Judiciary Advisory to the United States, cited by the Fifth Circuit in *New Orleans Public Service, Inc. v. United Gas Pipe Line,* 719 F.2d 733, 735 (5th Cir.1983), judges who may be members of classes to be certified in the future need not recuse themselves because they are parties to the action. Only when "a judge is a member of a class which has been declared, and a class is a party to the litigation of which the judge is considering participation that [the] judge would be disqualified." If nothing more, to hold a judge to be a "party" in any situation where he was a member of a potential class would do violence to the rules governing class actions. Certification would be a meaningless step if all entities whom a named plaintiff sought to represent were constrained by the mere filing of the action. The interests of a potential member of a class are too "uncertain" to justify holding those potential members to be parties under § 455. *United States v. Alabama,* 582 F.Supp. 1197, 1208 (N.D.Ala. 1984).

 C. Appearance of Impropriety—In addition, I do not consider that an appearance of impropriety exists in this case.[10]

---

Canon 13 stated that a judge "should not act in a controversy where a near relative is a party," and Canon 29 enjoined that a judge "should abstain from performing any judicial act when his personal interests are involved. E. Thode, *Reporter's Notes to Code of Judicial Conduct* at 60 (1973). The provisions of the present Code apply "to anyone who is a judge at the time of the adoption of the *Code* in his jurisdiction, *and to anyone who thereafter becomes a judge....*" *Id.* (emphasis added). Therefore, the present *Code of Conduct* applies to the instant action.

8. Contrary to the City's assertions, I recognized this responsibility when notified by letter of a

possible conflict. I then assessed the alleged conflict and found it to be an inadequate cause for recusal. No formal order was entered. However, notwithstanding my determination, the parties were free to file a motion to recuse under either 28 U.S.C. § 144 or § 455, and the Court's letter was simply that notification.

9. *See* discussion *supra.*

10. This argument is not raised in the Motion to Recuse, but does appear in the City's Petition for Writ of Mandamus. The Court cannot close its eyes to the existence of the Petition.

As will be further discussed below, the facts of the case at bar show that my connection to parties in interest in the case is tenuous at best. This case was filed while I resided in a predominately black area. Well before trial, however, I moved to a non-black and non-Mexican-American precinct where because of my minority status my vote was not being diluted.[11] Thus, by the time the case was actually litigated, I had no connection to the case other than the fact I was black and lived in Houston. Moreover, the only question before me is whether an award of attorney's fees would be appropriate. I have no liability as a party to the Plaintiffs' attorneys in this case for fees and costs; furthermore, I personally derived no benefit from the action at bar. In fact, an award of attorneys' fees in this case would be paid in part by my tax dollars. Thus, even if I (and Caucasians) was briefly over a decade ago within the putative class, my interest as a party was negligible, and recusal is inappropriate. *See, e.g., In Re New Mexico Natural Gas Antitrust Litigation,* 620 F.2d 794 (10th Cir.1980); *In Re Virginia Elec. and Power Co.,* 539 F.2d 357 (4th Cir.1976) (when his interest in litigation is minimal or speculative, judge need not recuse himself).

Fundamentally, my only connection with the real parties in interest in this case is race.[12] If my race is enough to disqualify me from hearing this case, then I must disqualify myself as well from a substantial portion of cases on my docket.[13] This circumstance would cripple my efforts to fulfill my oath as a federal judge to enforce the laws of our nation. I consider that the mere happenstance of my race is not enough connection to the actual parties in this case to make recusal appropriate in the situation at hand.

D. Facts of Instant Case—Finally, the facts of this case make recusal improper; indeed, the unique circumstances surrounding this case would render recusal an active disservice. This is true for two reasons.

First, the cases the City cites in support of its Motion are clearly distinguishable. The only authority directly supporting recusal is *New Orleans Public Service, supra,* and *In re Cement Antitrust Litigation,* 515 F.Supp. 1076 (D.Ariz.1981), *petition for writ of mandamus denied,* 688 F.2d 1297 (9th Cir.1982). In the *New Orleans* case, the Fifth Circuit did not hold that judges who were members of classes

11. I note that the City's at-large election system purportedly diluted minority voting strength; conversely, therefore, it must have artificially inflated the strength of Caucasian voters. Any non-minority registered voter who heard this case would theoretically have an interest—the mirror image of mine—in the outcome of this case, and thus been disqualified from hearing it. Presumably, all the judges in the Southern District of Texas therefore have an interest in this litigation and in that case, no disqualification could occur. In an analogous case, a black female District Court Judge refused to recuse herself from an employment discrimination case against a law firm despite the judge's background as a plaintiff's attorney in employment discrimination litigation. Judge Motley explained that:

> The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination on the part of a law firm, is, therefore, so biased that he or she could not hear the case, comes nowhere near the standards required for recusal. Indeed, if background or sex or race of each judge were, by definition, sufficient grounds

for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with a distinguished law firm or public service backgrounds.

*Blank v. Sullivan & Cromwell,* 418 F.Supp. 1, 4 (S.D.N.Y.1975). The age-old Rule of Necessity mandates that where all judges are disqualified, none are disqualified. *Evans v. Gore,* 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920); *Turner v. American Bar Ass'n,* 407 F.Supp. 451 (N.D.Tex. 1975).

12. I find it curious that my race was not alleged to be a basis for recusal in the City's Motion. The City argues that § 455 is self-enforcing, and it is. However, the City seemingly chose not to assert directly and forthrightly what has come to be the real basis for its Motion To Recuse.

13. I am a member of several protected classes often involved in litigation, for example, women, blacks and persons over forty years of age. *See* discussion in *Commonwealth of Pa. v. Local Union 542, Int'l Union of Engineers,* 388 F.Supp. 155 (E.D.Pa.1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975).

that had been declared were parties to the litigation. Instead, the Fifth Circuit merely held that because the class had not been certified, four judges were justified in not recusing themselves from the case being heard. Had the Fifth Circuit gone so far to decide the question not before it, *i.e.,* whether judges who are members of a class are parties to litigation for purposes of § 455, its analysis would have had to take into account the special nature of class actions.[14] Class actions may be brought under any of the three subsections of Rule 23(b), and substantial procedural differences exist between these types of actions. For example, individual notice must be given to each class member in a (b)(3) action, whereas no such notice need be given to members of (b)(2) classes. Rule 23(c)(2); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Sessum v. Houston Community College,* 94 F.R.D. 316 (S.D. Tex.1982); 3B J. Moore, Moore's Federal Practice ¶ 23.55 (2d ed.1981). Moreover, a member of a (b)(3) class may opt out of the litigation, unlike a member of (b)(2) class. *Penson v. Terminal Transport Co.,* 634 F.2d 989, 993–94 (5th Cir.1981); *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288 n. 7 (5th Cir.1975). Finally, liability for attorneys' fees is different under (b)(2) from liability under (b)(3). Typically, attorneys' fees in civil rights actions brought under (b)(2) are paid by defendants to prevailing plaintiffs under 42 U.S.C. § 1988. In contrast, the members of a (b)(3) class are liable to their attorneys for fees, and the award is made from the common fund recovered in litigation. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 482, 100 S.Ct. 745, 751, 62 L.Ed.2d 676 (1980) (members of (b)(2) class have "equitable obligation to share the expenses of litigation"). *See generally Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 241, 95 S.Ct. 1612, 1621, 1624–25, 44 L.Ed.2d 141 (1975) (discussing rationale for awarding attorneys' fees from common fund as opposed to ordering award from losing party); C. Wright and A. Miller, 7A *Federal Practice and Procedure: Civil* § 1803 (1972 and Supp.1984):

> [In a class action] [m]ost frequently fees are awarded when the plaintiff-representative successfully establishes or protects a fund or property in which the other class members have a beneficial interest. For example, fees have been allowed in an action by a group of creditors to impress a lien on funds held by a savings and loan association and in a suit to require the distribution of a fund held by the federal government for the benefit of the plaintiff-counties. In most cases of this type the attorneys' fees will be paid out of the damage recovery or the fund that has been preserved.... Fees also have been awarded directly against defendants. This most typically occurs in class actions involving civil rights, which by their very nature do not result in a tangible pecuniary benefit to the class.

As a consequence, different policy considerations obtain in determining whether a member of the class in a (b)(3) action is a party as opposed to when a member of a (b)(2) action should be called a party. A member of a class in a (b)(2) action is locked into his status as a litigant. He has no choice in the matter, just as I have no choice as to my race. The Fifth Circuit has

---

**14.** It is not unprecedented to treat members of classes differently from "parties" because of the nature of class actions.

Thus, for example, the presence of non-diverse class members will not defeat federal diversity jurisdiction so long as the class representatives and the opposing parties are diverse; *e.g., Friedman v. Meyers,* 482 F.2d 435 (2d Cir.1973); *see also Snyder v. Harris,* 394 U.S. 332, 380, 89 S.Ct. 1053, 1058–1059, 22 L.Ed.2d 319 (1969); 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 1755 at 550

n. 82; some courts have held that class members are not subject to discovery under Fed.R. Civ.P. 33; *e.g., Fischer v. Wolfinbarger,* 55 F.R.D. 129 (W.D.Ky.1971); *Wainwright v. Kraftco Corp.,* 54 F.R.D. 532 (N.D.Ga.1972); and other courts have held that class members should not be treated as parties for purposes of counterclaims under Rule 13; *e.g. Donson Stores v. American Bakeries Co.,* 58 F.R.D. 481 (S.D.N.Y.1973).

*In re Cement,* 688 F.2d at 1309 (footnotes omitted).

not addressed the question of whether a member of a (b)(2) class action is a "party," and the legislative history of § 455 does not contemplate class actions. As a consequence, it would be inequitable to interpret the provisions of § 455 to include all class members as automatic parties.

The City also cites *In re Cement* as authority for the proposition that a judge who is a member of a class action is automatically a party. However, *In re Cement* is wholly distinguishable from the case at bar for several reasons. First, *In Re Cement* was a class action brought under Rule 23(b)(3), which is different from a (b)(2) action such as the one at bar. *See Advisory Comm. on Code of Conduct Advisory Op.* No. 68 at p. 1 (explaining that corporations in which judge's wife owned stock chose not to opt out of litigation at bar). Furthermore, in *In re Cement*, the question of whether the judge was a party was not actually at bar. As the appellate court noted, "We need *not* decide the general question whether class members are in fact 'parties' to a class action suit...." *Id.* at 1310 (emphasis added).

Finally, *In re Cement* does not take account of the policy behind disqualifying parties. As noted above, the purposes of § 455 are two-fold: to avoid the appearance of any impropriety and to prevent actual bias from infecting the decision-making in a case. In the lawsuit at bar, I (along with members of other racial groups included in the putative class in the Complaint) have no interest in the outcome of the attorneys' fees proceedings, and at best had only a marginal and temporary interest in having the voting structure in Houston changed from at-large election of City Council members to election from single-member districts. Thus, at the point in time in which I will sit on the case, the total lack of interest which I have in the outcome of this case means that neither the appearance of impropriety nor actual bias will taint my decision-making process.

The second reason that to recuse would be a disservice in this case is that the facts of this case are so removed from those in situations where recusals have been found to be appropriate that recusal would be improper. For example, I have shown how marginal and tenuous my interest in the outcome of the determination of attorneys' fees is. In addition, the class was never certified in this case, and thus to label me to be a party would do violence to the Federal Rules of Civil Procedure governing class actions. Finally, there is no indication that Congress intended that every time a judge was a member of a putative class— or, for that matter, a certified class for which the judge's interest was negligible— that that judge should be considered to be a party.

### III. Conclusion

The Court has denied the City of Houston's Motion To Recuse because it has no basis in fact or law. The only issue which this Court has been called upon to resolve since C.A. No. 73–H–1650 has been assigned to it, is the propriety of and the amount, if any, of attorneys' fees to which plaintiffs are entitled in that action. The City of Houston had registered no objection to the Court ruling on the plaintiffs' motion for attorneys' fees in Cause No. 78–H–2174 and 78–H–2407. Cause No. 73–H–1650 is properly consolidated with those actions, since plaintiff is seeking to rely upon services performed in that case for recovery of fees in all three consolidated actions. However, it is Cause No. 73–H–1650 that prompted the City of Houston to notify the Court of a potential "conflict". The City of Houston asserts that I should recuse myself because I am a party to the action and secondarily that there would be an appearance of impropriety for me to preside over this consolidated matter. Support is sought in 28 U.S.C. §§ 455(a), (b)(5)(i) and Canon 3(C)(1)(d)(i) of the Code of Judicial Conduct. The facts are:

1. The action was originally filed as a class action on behalf of blacks, whites, and Mexican-American citizens of the City of Houston, Harris County, Texas, who are residents and qualified voters of the City of Houston;

2. The parties later seemingly agreed in November of 1976 that the class would be defined as all black and Mexican-American registered voters in the City of Houston;

3. Judge Allan B. Hannay, the presiding judge over 73–H–1650 never certified the action as a proper class action pursuant to 23(c)(1) of the Federal Rules of Civil Procedure. In the Order of March 8, 1977, entered by the Honorable Allan B. Hannay, the class was described as blacks and Mexican-American minorities of the City of Houston, Harris County, Texas, who are residents and qualified voters of the City of Houston;

4. I am and at all material times have been black. The only other person who fits in the category described in § 455(b)(5) has at all material times been and is black. I was a registered voter until November, 1975, when my registration was cancelled because of a change in residence and because I failed to reregister. I have attempted to cure that civic infirmity by submitting a voter registration application since the filing of the City's Motion To Recuse. My husband has been and continues to be a registered voter at the addresses and appropriate times referred to in this Memorandum, Opinion and Order;

5. I and the only other person fitting the category described in § 455(b)(5) resided in a predominately black neighborhood as of the filing of the Complaint in 73–H–1650; and

6. At all times since August 1975 (approximately one year prior to the time that the parties "agreed" that the action was to be a class action) I have resided in a voting precinct that was and has been predominately non-black and non-Mexican-American.

The law is clear that I am not a party to this action and there is no appearance of impropriety because I am presiding over these consolidated actions.

1. The action has never been certified as a class action pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure. *Board of School Commissioners of the City of Indianapolis v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

2. Membership in a putative class is not sufficient to require recusal. *New Orleans Public Service, Inc. v. United Gas Pipe Line*, 719 F.2d 733 (5th Cir.1983).

Since the action was never certified as a class action, my interest as a putative class member is no different than that of Caucasians, blacks, and Mexican-Americans who were registered voters at the time that the complaint was filed in 1973, and who were described to be members of the putative class. The so-called agreement in November of 1976 that changed the parameters of the class does not render my interest any more substantial. *In Re New Mexico Natural Gas Antitrust Litigation*, 620 F.2d 794 (10th Cir.1980); *In Re Virginia Elec. and Power Co.*, 539 F.2d 357 (4th Cir.1976).

3. The purported agreement of November 1976 and even the entry of Judge Hannay's order of March 8, 1977 does not elevate my interest. The interest that I have in the only proceedings that have been presented to me, *e.g.*, Plaintiffs' Motion for Attorneys' Fees, is no greater than that of any judge in the United States District Court for the Southern District of Texas. *DuPlantier v. U.S.*, 606 F.2d 654 (5th Cir.) *reh'g den*, 608 F.2d 1373 (5th Cir.1979), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 518 F.Supp. 1017 (S.D.Tex.1981); *Blank v. Sullivan & Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y.1975); *Commonwealth of Pa. v. Local Union 542, Int'l Union of Engineers*, 388 F.Supp. 155 (E.D. Pa.1974) *cert. denied* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975).

4. Putative membership, and indeed membership in a class action properly certified under 23(b)(3) of the Fed.R.Civ.P. carries different considerations than a class action under 23(b)(2) of the Federal Rules of Civil Procedure. Unlike, perhaps, a 23(b)(3) class action, a member is not the equivalent of a party "when it counts." *In Re Cement Antitrust Litigation*, 515 F.Supp. 1076 (D.Ariz.1981), *petition for*

*writ of mandamus denied,* 688 F.2d 1297 (9th Cir.1982). A putative member of a 23(b)(2) class action is not entitled to notice of the pendency of the action prior to certification; is not entitled to opt out and typically has no responsibility for fees as contrasted with the payment of fees from the fund which is the usual procedure in 23(b)(3) class actions.

5. The only issue which this Court has been asked to resolve is the propriety of an award of attorneys' fees to the plaintiffs. I have no stake in the outcome of that issue. Since I have no responsibility nor liability to counsel for the plaintiffs, the only interest is that as a taxpayer, and that would be the interest in containing the fees requested by plaintiffs; however that interest is hardly substantial. *See In re New Mexico Natural Gas Antitrust Litigation, supra.*

In sum, the City of Houston has moved this Court to recuse itself from considering the issue of propriety of an award of attorneys' fees, if any, to plaintiffs in an action which was initially filed as a class action and was defined as to include every major ethnic group in the City of Houston. The class definition has gone through several machinations from the time that the complaint was filed until the time that the Order was issued by Judge Hannay; however, at no time was the class action certified. I am not a party to the class and recusal is not required under § 455(b)(5)(i). Nor is recusal required under § 455(a). I am not a party and therefore, contrary to the City's assertion in its Motion To Recuse, the appearance of impropriety is not so obvious. The fact that I am black and have been a registered voter is not and should not be sufficient to create an appearance of impropriety. My status is no different from that of the other putative class members described in plaintiffs' Complaint which included Caucasian, black, and Mexican-American registered voters. Indeed, the facts surrounding my particular case make it crystal clear that I have not benefited from this litigation and at all relevant times since the "agreement" as to the scope of the class, I have not been in a position to benefit. Although the "duty to sit" is not a factor to be considered since the 1973 amendments of § 455, this Court is acutely aware of its responsibility to serve in its fullest capacity. This Court would find itself a member of many protected classes, *e.g.,* race-black; sex-women; age-over 40; and would find that it would be seriously hampered if not crippled in its ability to consider the claims of litigants which come to it through the normal course of random assignment. The City of Houston's Motion To Recuse, thus, has serious implications. Most importantly, however, the Motion To Recuse is without any support in the context of this case, and thus must be denied.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that the Motion be and hereby is DENIED.