**MDCM HOLDINGS, INC., On Behalf of Itself and Others Similarly Situated Plaintiff,**

v.

**CREDIT SUISSE FIRST BOSTON CORPORATION, Defendant.**

**In re: Initial Public Offering Securities Litigation, This Document Relates To: ALL Cases.**

**Nos. 01 Civ. 9333(SAS), 21MC 92(SAS).**

United States District Court, S.D. New York.

May 20, 2002.

Steven J. Toll, Linda P. Nussbaum, Susan R. Schwaiger, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., New York City, H.

Laddie Montague, Jr., Charles Pearsall Goodwin, Philadelphia, PA, for Plaintiff.

Robert B. McCaw, Fraser L. Hunter, Jr., Wilmer, Cutler & Pickering, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

On October 17, 2001, certain underwriter defendants (the "Moving Defendants") moved for this Court to disqualify itself pursuant to 28 U.S.C. § 455 in *In re Initial Public Offering Securities Litigation*, 21 MC 92(SAS) ("IPO securities litigation"). *See* 10/17/01 Notice of Motion. That motion was denied on November 28, 2001. *See In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d 70 (S.D.N.Y.2001). The Moving Defendants then filed a petition for a writ of mandamus with the United States Court of Appeals for the Second Circuit on December 13, 2001.

A week later, this Court determined that another case, *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 01 Civ. 9333, should be coordinated with the IPO securities litigation for pretrial purposes. *See* 12/21/01 Transcript ("Tr.") at 3. The decision to coordinate the two cases rested in part on the fact that the cases have similar factual allegations, even though *MDCM Holdings* is brought under state law on behalf "of 182 U.S.—domiciled issuers that [Credit Suisse] led or co-led" since 1998 and the IPO securities litigation is brought under federal law on behalf of all shareholders who owned the IPO stock.[1] 1/4/02 Tr. at 5. *See also* Fed. R.Civ.P. 42(a); Rule 15(a) of the Local Rules for the Division of Business Among District Judges.

On January 4, 2002, Credit Suisse, a defendant in *MDCM Holdings* and a Moving Defendant in the IPO securities litiga-

---

1. Jurisdiction over *MDCM Holdings* is based on diversity of citizenship. *See* Amended Complaint, *MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, No. 01 Civ. 9333

tion, argued that this Court should disqualify itself from presiding over *MDCM Holdings* because of its stock ownership in Fairchild Semiconductors and Jupiter Communications, two of the putative members of the plaintiffs' class in *MDCM Holdings*.[2] *See* 1/4/02 Tr. at 3–4. Credit Suisse argued that recusal was required because these two issuers were "part[ies] to the proceeding," 28 U.S.C. § 455(b)(4).[3] *See id.* at 5. Credit Suisse also argued that disqualification was required under 28 U.S.C. § 455(a), although it conceded that this issue was "exactly the same" as the one rejected by this Court in the IPO securities litigation. 1/04/02 Tr. at 6. *See also In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 92–93. Because the decision on the mandamus petition was still pending, I agreed not to decide any substantive motions in either case until the Second Circuit had issued its opinion. *See* 1/4/02 Tr. at 10.

On April 1, 2002, the Second Circuit denied the Moving Defendants' petition.

*See In re Certain Underwriter Defendants,* —— F.3d ——, —— (2d Cir.2002). Now that the Second Circuit has issued its decision, Credit Suisse's motion in *MDCM Holdings* must be resolved. In addition, I must consider another issue that no party has raised: I currently own stock in AOL Time Warner, Inc., ("AOL") and Intel Corporation ("Intel"), companies that, according to the parties' financial disclosure statements, own stock in five of the companies that are issuer defendants in the IPO securities litigation.[4] The question is whether this financial interest mandates recusal.[5]

## II. ANALYSIS

### A. Stock Ownership in Putative Members of the Plaintiff Class

As mentioned above, this Court currently owns stock in two companies that entered into a contract with Credit Suisse to underwrite their respective IPOs. Be-

(filed February 4, 2002), ¶ 4 (citing 28 U.S.C. § 1332). The original complaint was filed on May 25, 2001, in the Southern District of Florida. On October 5, 2001, Credit Suisse and MDCM Holdings, Inc., presented the Florida district court with a joint stipulation asking for a transfer to this Court. That transfer was ordered on October 10, 2001.

**2.** Fairchild Semiconductors and Jupiter are not defendants in the IPO securities litigation. *See* 1/4/02 Tr. at 4.

**3.** Section 455(b)(4) requires a judge to disqualify herself if: "[She] knows that [she], individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, *has* a financial interest in the subject matter in controversy or *in a party to the proceeding,* or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4) (emphasis added).

**4.** AOL owns stock in China.com, iVillage.com, OpenTV Corp. and TiVo.com. *See* 5/9/02 Letter from Nancy E. Delaney, Counsel

for China.com (stating that AOL owns 6.6% of China.com); 5/13/02 Letter from Holly M. Dellenbaugh, Counsel for iVillage.com (stating that AOL owns 4.6% of iVillage.com); 5/16/02 Letter from Cynthia A. Dy, Counsel for OpenTV Corp. (stating that AOL owns 6.4% of OpenTV Corp.); 5/16/02 Letter from Patricia M. Grande, Counsel for TiVo.com (stating that AOL owns 11.8% of TiVo.com). While the 1.9 statement discloses that Intel owns stock in Liquid Audio, Inc., "Intel currently does not hold a substantial interest (5% or more of outstanding shares), if any, in Liquid Audio." 5/16/02 Letter from Cynthia A. Dy, Counsel for Liquid Audio.

**5.** At the Court's direction, the moving defendants conducted an extensive conflict check but did not raise this issue as a potential conflict. *See In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 78. However, "even if the parties do not move for recusal, section 455 creates an independent duty requiring federal judges to evaluate in every case whether they should disqualify themselves." *Id.* at 74–75.

cause section 455(b) requires a judge to recuse herself if she knows that she has "a financial interest ... in a party to the proceeding," 28 U.S.C. § 455(b)(4), the first question is whether these putative class members are "part[ies] to the proceeding." 28 U.S.C. § 455(b)(4). This issue was raised by the Moving Defendants in the IPO securities litigation where my son and I, as former owners of certain IPO stocks, were putative class members until we waived any interest in the actions. *See In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 92–93. In that case, the Moving Defendants argued that I was disqualified from presiding over the case because my son and I were "part[ies] to the proceeding" under subsection (b)(5)(i).[6] *See id.* The Second Circuit, however, held that recusal was not required because I was no longer a putative class member due to divesture and waiver. *See id.* at—.

 While the Second Circuit never reached the issue of whether putative class members are deemed to be parties to the proceedings,[7] every court that has addressed this issue has concluded that they are not. *See Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1030 (5th Cir.1998) (holding that "members of a putative class are not

'parties' to a class action for these purposes [under section 455(b)(5) ]."); *New Orleans Pub. Serv. v. United Gas Pipe Line Co.*, 719 F.2d 733, 735 (5th Cir.1983) (holding that judges are not disqualified if they are only putative class members); *LeRoy v. City of Houston*, 592 F.Supp. 415, 419 (S.D.Tex.1984) ("If nothing more, to hold a judge to be a 'party' in any situation where he was a member of a potential class would do violence to the rules governing class actions.... The interests of a potential member of a class are too 'uncertain' to justify holding those potential members to be parties under § 455.").[8] By definition, a putative class member is only a *potential* class member, rather than a party in fact. *See id.* At most, this Court currently has a financial interest in two companies that may, or may not, be parties to this litigation (as a member of the plaintiff class) at some future date. Such an interest is too speculative to trigger the recusal provisions of section 455(b)(4).

"Of course, if the class were already certified and it included this Court, the Court would be [a] 'party to the proceeding.'" *In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 92 n. 34 (citing *In re Cement Antitrust Litig.*, 688 F.2d 1297,

---

**6.** Subsection (b)(5) states in pertinent part:

(b) [A Judge] shall also disqualify [her]self in the following circumstances:
(5) [She] or [her] spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) *Is a party to the proceeding,* or an officer, director, or trustee of a party ...
28 U.S.C. § 455(b)(5) (emphasis added).

**7.** The Second Circuit did not decide whether putative class members are parties to the proceedings because my son and I had already divested our class interests. Thus, the Second Circuit only addressed the narrow question of whether a divested interest requires recusal. *See also In re Initial Pub. Offering Secs. Litig.*,

174 F.Supp.2d at 93 ("The issue [of whether a putative class member is a party to the proceeding] is moot, of course, because I have waived my status as a potential class member."). In contrast, the issue that is now squarely before this Court is whether having a financial interest in a putative class member requires recusal under section 455(b)(4). *See* 28 U.S.C. § 455(b)(4) (a judge shall disqualify herself if "[she] knows that [she] has a financial interest ... in a party to the proceeding....").

**8.** *See also* 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, 2001 Supplement, at § 3548 n. 5 ("Members of a putative class are not 'parties' for purposes of 28 U.S.C. § 455(b)(5).").

1315 (9th Cir.1982)). Therefore, if Fairchild Semiconductors and Jupiter Communications are included in the defined and certified class, and they do not opt out, this Court must either sell its stock or disqualify itself before any further substantive decisions are made. *See* 28 U.S.C. § 455(f); *cf. Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir.1986) (Posner, J.) (holding that a judge need not recuse herself if a conflict arises for the first time in the middle of the litigation as long as she "divested [her]self of the interest as soon as [she] discovered it[,] and made no rulings between the date of discovery and the date of divestment.").

The second question raised under subsection (b)(4) is whether the stock I own "could be *substantially* affected by the outcome of the proceeding" at this stage of the litigation. 28 U.S.C. § 455(b)(4) (emphasis added). Deciding this question requires speculation as to (1) whether the companies will be included in the class, (2) whether *any* companies will recover money from the class action, and (3) how such recovery will affect the prices of the companies' stock. At this time, the effect of this litigation on the prices of these two stocks is, at best, "remote, contingent, or speculative" and thus cannot serve as a basis for disqualification. *In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 92 (quotation marks and citations omitted).

### B. Stock Ownership in a Company that Has a Financial Interest in a Party to the Proceeding

Under section 455(b), the same two questions are raised by my ownership of

AOL and Intel, corporations that own stock in five issuer defendants in the IPO securities litigation. *See supra* note 4. Under the plain language of the statute, such stock ownership does not constitute a disqualifying interest because it is not a "financial interest *in* a party to the proceeding." 28 U.S.C. § 455(b)(4) (emphasis added). Rather, they are financial interests in corporations that, in turn, have an interest in parties to the proceedings. And, for the same reasons given above, it cannot be said that the stock price of AOL or Intel will be substantially affected by the outcome of this litigation.

Of course, form must not be elevated over substance. If these companies were owned exclusively by AOL or Intel, or the companies were corporate subsidiaries, then stock ownership in AOL or Intel would require disqualification if not promptly sold. At the same time, nothing in the text of section 455(b) or its legislative history indicates that Congress intended to require disqualification whenever a judge owned stock in a company that is a shareholder in a party (*e.g.*, if AOL was not a parent corporation but only owned a small percentage of shares in a party to this litigation).

The key question is whether the company in which the judge owns stock has effective control over the party to the litigation—that is, at least 50% of the voting stock or a majority of the capital interest in the party.[9] Thus, for example, a judge who owns stock in a corporation that "holds 80% of the outstanding stock of [a

---

9. *Cf.* Canon 3.1–1(f) of the *Code of Conduct for United States Judges* ("When a parent company does not own all or a majority of stock in the subsidiary, a judge should determine whether the parent has *control* of the subsidiary, necessitating recusal.") (emphasis added); Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 57 (revised 1998) ("[W]here a judge knows that a party is *controlled* by a corporation in which the judge owns stock,

party to the proceedings] through one of its wholly owned subsidiaries" must disqualify herself unless she has properly divested herself of ownership. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir.1991). In contrast, because AOL and Intel do not exercise control over any of the issuer defendants, my stock ownership does not trigger the disqualification provision of section 455(b)(4).

It is worth emphasizing that Local Rule 1.9 provides:

> To enable judges and magistrate judges of the court to evaluate possible disqualification or recusal, counsel for a private (non-governmental) party shall submit at the time of filing the initial pleading or other court paper (e.g., complaint, answer, notice of motion, notice of removal) on behalf of that party a certificate of identification of *any corporate or other parents, subsidiaries, or affiliates of that party*, securities or other interests in which are publicly held. A revised certificate of identification shall be filed promptly upon any change in such *corporate parents, subsidiaries or affiliates.*

S.D.N.Y. Local Civ. R. 1.9 (emphasis added).[10] Rule 1.9 only requires parties to disclose *publicly-owned* parents (*i.e.*, corporations that control them), subsidiaries (*i.e.*, corporations that they control), or other affiliates.[11] It was thus inappropriate for the issuer defendants to include non-controlling stock interests in their companies in their disclosure statements. Given the limited resources of the Court, which must review hundreds of 1.9 statements every year, parties should only disclose what the local rule requires.

### C. Recusal Under Section 455(a)

■ "Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a)." *In re Certain Underwriter Defendants,* —— F.3d at ——. Section 455(a) requires a judge to disqualify herself if her partiality "might reasonably be questioned." 28 U.S.C. § 455(a). "Examination of the reasons given for recusal under § 455(a) 'is not mechanical but requires an exercise of reasoned judgment.'" *In re Certain Underwriter Defendants,* —— F.3d. at —— (quoting *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001)). Moreover, "the grounds asserted in a recusal motion must be scrutinized with care and judges should not recuse themselves solely because a party claims an appearance of partiality." *In re Aguinda,* 241 F.3d at 201. "Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice." *Id.* (quoting S.Rep. No. 93–419, at 5 (1973); H.R.Rep. No. 93–1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355).

In *In re Certain Underwriter Defendants,* the Second Circuit reviewed this Court's stock ownership and found no ground for disqualification under section

---

the judge should disqualify in the proceeding.") (emphasis added).

**10.** The Local Rules are available online at http://www.nysd.uscourts.gov/rules/rules.htm.

**11.** The parties seem to misread Rule 1.9 to require disclosure of "[1] any corporate or other parents, [2] subsidiaries, or [3] affiliates of that party, [4] securities or [5] other interests in which are publicly held." S.D.N.Y. Local Civ. R. 1.9. As the context of the Rule 1.9 makes clear, the phrase "securities or other interests in which are publicly held" only serves to modify the type of interest that must be disclosed. It is for this reason that Rule 1.9 only requires that the parties file a new certificate "promptly upon any change in such corporate parents, subsidiaries or affiliates." *Id.*

455(a). The only new information raised by Credit Suisse in the *MDCM Holdings* motion is my ownership in Fairchild Semiconductors and Jupiter Communications. These interests do not affect my determination that "an objective, disinterested observer fully informed of the underlying facts" would not entertain a "significant doubt that justice would be done absent recusal."[12] *In re Aguinda*, 241 F.3d at 201. Nor does my ownership in AOL and Intel affect this analysis.[13]

## III. CONCLUSION

For the reasons set forth above, I find that there is no conflict under section 455(b)(4) or section 455(a). *See In re Aguinda*, 241 F.3d at 201 ("[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."). Accordingly, Credit Suisse's motion in *MDCM Holdings* is denied.

12. Credit Suisse has admitted that the issue raised under section 455(a) in this case is "exactly the same" as the one raised in the IPO securities litigation. 1/04/02 Tr. at 6. If recusal is not required in the IPO securities litigation, it is not required here.

13. Indeed, the parties to the IPO litigation have not raised a section 455(a) challenge based on this stock ownership.